John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
Alina S. Vulic (SBN 337080)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
Telephone: 310-273-1230
Facsimile:  310-858-1063
*kristensen@cz.law*
*jmartinez@cz.law*
*avulic@cz.law*

***Attorneys for Plaintiffs***

# THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| IDA HURLEY, an individual, and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> vs.<br><br>RED TIE, LLC DBA RED TIE GENTLEMEN'S CLUB; MIKE MUDARIS, an individual; INGRID GOULDING, an individual; and BOB SIMONI, an individual,<br><br>    Defendants. | Case No.: 2:20-cv-5726-ODW-PVC<br><br>**COLLECTIVE ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ISSUANCE OF CORRECTIVE NOTICE**<br><br>**Hearing:**<br>**Date:** June 20, 2022<br>**Time:** 1:30 p.m.<br>**Place:** 5D<br><br><br><br>Trial Date: August 30, 2022<br>Complaint Filed: June 26, 2020 |

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that plaintiffs Ida Hurley, Briggette Donis, Elianna Solis, Marissa McElhaney, Alyzza Valtierra, Jessica Goodman, Maribel Real, Stephanie Munns, Alyxandra Mammensohn, LaShai Hunt, Kayla White, Kema Patterson, and Anna Mia Caldwell Bresin, Daisy Resendez (collectively, "Plaintiffs") will and hereby do move this Court for an order for issuance of corrective notice to cure improper communications by defendants Red Tie, LLC dba Red Tie Gentlemen's Club, Mike Mudaris, Bob Simoni, and Ingrid Goulding (collectively, "Defendants") to putative members to undermine this Court's authority and jurisdiction as improper attempts to dissuade putative collective members from vindicating their federal statutory rights, and to declare the purported settlements void under the Fair Labor Standards Act ("FLSA"), and payments to plaintiffs from Defendants are gratuities.

As a result of Defendants' improper *ex parte* communications, Plaintiffs now seek an emergency order for the following relief: (1) invalidating the releases obtained as a result of the communication; (2) prohibiting Defendants or their counsel from communicating about this lawsuit or the claims or defenses asserted in it with any putative collective members; (3) corrective language in a communication to come directly from this Court; (4) awarding Plaintiffs the attorneys' fees and costs incurred in bringing this motion.

///
///
///
///
///
///
///

1    This Motion is based upon this Notice, the accompanying Memorandum of
2  Points and Authorities, the declaration of John P. Kristensen, the pleadings, and
3  all other papers on file in this action, and upon such other evidence and arguments
4  as may be presented at the hearing on this matter.

5

6  Dated:  May 23, 2022              Respectfully submitted,

7

8                          By:    */s/ John P. Kristensen*
                                  John P. Kristensen (SBN 224132)
9                                  Jesenia A. Martinez (SBN 316969)
                                  Alina S. Vulic (SBN 337080)
10

11                                  ***Attorneys for Plaintiffs***

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

Plaintiffs' counsel certifies that prior to the filing of the instant motion, all parties, through counsel, met and conferred pertaining to the subject matter of the instant motion on Monday, April 4, 2022. Defendants responded that they would oppose this motion and some of the relief requested. They did not oppose curative notice.

Dated:  May 23, 2022                    Respectfully submitted,

By:  ___*/s/ John P. Kristensen*___

John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
Alina S. Vulic (SBN 337080)

***Attorneys for Plaintiffs***

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ..................................... **1**

    **I.**    **INTRODUCTION** ...................................................................... **1**

    **II.**   **RELEVANT FACTUAL BACKGROUND** ...................................... **3**

        **A.**   **Procedural Background** ........................................................ **3**

        **B.**   **Illicit Solicitations in Lieu of Proper Litigation Procedures** ....................................................................... **4**

            **1.**   **Plaintiff Erika Hice** ................................................ **6**

            **2.**   **Plaintiff Alizea Montiel** ........................................ **7**

        **C.**   **Insufficient terms of the purported "settlement agreements"** ..................................................................... **8**

        **D.**   **Subversion of Proper Court Approval of Such FLSA "settlement agreements"** .................................................. **9**

    **III.**  **ARGUMENTS** ........................................................................ **11**

        **A.**   **Legal Principles Controlling this Court's Oversight of Unauthorized *Ex-Parte* Communications with Collective Members** ............................................................ **11**

        **B.**   **Legal Principles Controlling this Court's Oversight of Coercive, Misleading or Otherwise Improper Solicitations** ....................................................................... **15**

        **C.**   **This Court Must Order Corrective Notice Where the *Ex Parte* Communications Are Misleading, Coercive, or Attempts to Undermine the Collective Action or Confidence in Plaintiffs' Counsel** ...................................... **17**

        **D.**   **The Court Must Issue Corrective Notice to Address Defendants' Misleading, Harassing and Coercive Behavior** ............................................................................ **21**

    **IV.**  **CONCLUSION** ...................................................................... **23**

1

## **TABLE OF AUTHORITIES**

**Cases**

*Gulf Oil Co. v. Bernard* 452 U.S. 89 (1981) ...............................12, 13, 16, 18, 19

*Almodova v. City & Cty. of Honolulu, Civ.* No. 07-00378 DAE-LEK, 2010 WL 1372298 (D. Haw. Mar. 31, 2010), ..............................................................11

*Slavkov v. Fast Water Heater Partners* I, LP  No. 14-CV-04324-JST, 2015 WL 6674575(N.D. Cal. Nov. 2, 2015).....................................................................2, 8

*Bonetti v. Embarq Management Co.* 715 F.Supp.2d (M.D.Fla. 2009) ...............11

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945) ......................................................................................................................10

*Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. Apr. 15, 2014) ........................18

*Camp v. Progressive Corp.* No. Civ. 01-2680, 2004 WL 2149070(E.D. La. Sept. 23, 2004)................................................................................................................11

*Central Hudson Gas Co. v. Public Service Commission*, 447 U.S. (1980)..........19

*Cheverez v. Plains all Am. Pipeline, LP*, No. CV15-4113 PSG (JEMX), 2016 WL 861107*(C.D. Cal. Mar. 3, 2016)* ......................................................................22, 23

*Digidio v. Crazy Horse Saloon & Rest., Inc.,* 880 F.3d (4th Cir. 2018) ..............15

*Edwards v. Arthur Andersen* 44 Cal. 4th 937, 189 P.3d 285, 81 Cal. Rptr. 3d 282 2008)......................................................................................................................10

*Guifu Li v. A Perfect Day Franchise, Inc.,* 270 F.R.D. 509, 517 (N.D. Cal. 2010); ......................................................................................................................16, 18, 23

*Hernandez v. Vitamin Shoppe Industries Inc*.174Cal.App.4th1441 (2009)…………………………………………………………………………….14

*Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165 (1989); ........................15, 16

*In re School Asbestos Litigation*, 842 F.2d 996 (3d Cir. 1988)...........................13

*Johnson v. Serenity Transportation, Inc.,* 141 F.Supp.3d 974 (N.D. Cal. 2015)...18

*Kleiner v. First Nat. Bank of Atlanta,* 97 F.R.D. 683 (N.D. Ga. 1983)..15, 16, 17, 19, 20

*Kutzman v. Derrel's Mini Storage, Inc.,* No. 1:18-CV-755 AWI-JLT, 2018 WL 11389263 ........................................................................................................13, 17

*Lee v. The Timberland Co.,* 2008 WL 2492295 (N.D.Cal. 2008).......................10

*Lynn's Food Stores Inc. v. Dep't of Labor*  679 F.2(11th Cir. 1982)………..10, 11

*Maddrix v. Dize,* 153 F.2d 274 (4th Cir. 1946) ...................................................10

*Marino v. CA Cafe, Inc*. No. 16-CV-6291 (N.D. Cal. Apr. 28, 2017) .................2,

*Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 62 S. Ct. 1216, 86 L. Ed. 1682 (1942). ...................................................................................10

*Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty*., (N.D. Cal. July 29, 2016)....................................................................................19

*Romero v. May Trucking Co.*, No. EDCV 17-2406 JGB, 2018 WL 5905604 (C.D. Cal. Feb. 21, 2018) ...............................................................................2

*S.F. Unif. Sch. Dist. ex rel. Contreras v. First Student, Inc.* (2013) 213 Cal. App. 4th ......................................................................................14

*See Bass v. Pjcomn Acquisition Corp*., 2011 WL 902022 (D. Colo. Mar. 14, 2011) ..........................................................................................17

*Stransky v. HealthOne of Denver, Inc.,* 929 F. Supp. 2d 1100 (D. Colo. 2013)...18

*Virginia State Board of Pharmacy v. Virginia Citizens Council*, 425 U.S. 971 (1976)) ...................................................................................19

*Wang v. Chinese Daily News, Inc.,* 623 F.3d 743 (9th Cir. 2010), ...............19, 20

*Weller v. Dollar Gen. Corp.,* No. CV 17-2292, 2019 WL 1045960 (E.D. Pa. Mar. 4, 2019).....................................................................................12

*Yue Zhou v. Wang's Restaurant*  No. C 05-0279 PVT, 2007 WL 172308 (N.D.Cal. Jan. 17, 2007)...............................................................................11

## **Statutes**

29 U.S.C. §§ 201, *et seq.* ..........................................................................1

28 U.S.C. § 1331...................................................................................5

Cal. Labor Code § 2804...........................................................................10

Cal. Labor Code § 2802...........................................................................10

## **Other Authorities**

Manual Complex Lit. § 21.12 (4th ed.)...................................................14, 19

## **Rules**

Fed. R. Civ. P. 23(a) ..............................................................................13

Fed. R. Civ. P. 23 (b)........................................................................14, 20

Fed. R. Civ. P. 23(c)(2)(b)…………………………………………………………13,18

CZ | CARPENTER & ZUCKERMAN

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Ida Hurley, Briggitte Donis, Elianna Solis, Marissa McElhaney, Alyzza Valtierra, Jessica Goodman, Maribel Real, Stephanie Munns, Alyxandra Mammensohn, LaShai Hunt, Kayla White, Kema Patterson, and Anna Mia Caldwell Bresin, Daisy Resendez (collectively, "Plaintiffs") respectfully request that the Court to issue an order issuing corrective notice in the above-entitled matter as a result of defendants Red Tie, Inc. dba Red Tie Gentleman's Club, Mike Mudaris, Bob Simoni, and Ingrid Goulding's (collectively "Defendants") improper and illegal conduct of attempting to contract around Plaintiffs' legally guaranteed rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

Most notably, this is ***not*** the first occurrence of misconduct of the part of Defendants in this matter. Defendants have willfully disobeyed the jurisdiction of this very Court on a previous and separate occasion wherein they purposefully withheld the names of putative member Plaintiffs in this matter. *See* Dkt. 87. In fact, as a result of Defendants' prior conduct, this Court previously ordered the issuance of further notice. Plaintiffs' Counsel were permitted to re-issue notice because the Defendants deliberately failed to comply with the Court's Order to Produce dancer information, for which they were actually sanctioned by this Court. *See* Dkt. 87.

The behavior at the center of this motion marks the **second** instance of misconduct by the Defendants. After originally refusing to provide names of Plaintiffs in the matter, Defendants are now trying to "pick off" active collective members through solicitation and intimidation.  Defendants have, in actuality, induced plaintiff Erika Hice ("Ms. Hice") and plaintiff Alizae Montiel ("Ms. Montiel") into "settling" their FLSA minimum wage claims by repeatedly sending agents to speak with Ms. Hice and Ms. Montiel, *ex parte*, without Plaintiffs'

counsel's knowledge, and, thereafter, soliciting them to "release" their FLSA claims in return for severely *undervalued* "settlements." *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 2-8. Defendants have actively solicited Ms. Hice to accept a settlement worth an estimated **six-times *less***, than what she is properly owed under her FLSA claims.

Quite simply, Defendants have gone around Plaintiffs' counsel's back and had numerous Plaintiffs sign defective releases for less than adequate amounts to compensate them under their FLSA claims. Instructive case law in these very circumstances has firmly established that this Court has the power to invalidate those releases, issue curative notices and order Defendants and their agents from ceasing similar communications going forward. A plethora of case law in this Circuit, as well as the foundational Federal Rules of Civil Procedure, not only prohibit the types of communication that Defendants have engaged in, but also, expressly provide jurisdictional authority to this very Court to manage, regulate and further, act on its powers to prohibit such interference by issuing corrective notice in such circumstances.

Courts in similar circumstances, with conduct fair less egregious than that of Defendants' have required corrective notice be sent to the collective class members, at Defendants' expense. *See Romero v. May Trucking Co.*, No. EDCV 17-2406 JGB, 2018 WL 5905604, at *3-4 (C.D. Cal. Feb. 21, 2018); *Marino v. CA Cafe, Inc.* (N.D. Cal. Apr. 28, 2017) No. 16-CV-6291 YGR, 2017 WL 1540717, at *3; *see also*, *e.g.*, *Slavkov v. Fast Water Heater Partners* I, LP (N.D. Cal. Nov. 2, 2015) No. 14-CV-04324-JST, 2015 WL 6674575, at *2 ["Courts in this district have limited communications, as well as invalidated agreements that resulted from those communications, when they omitted critical information or were otherwise misleading or coercive."].)

Defendants have engaged in conduct constituting harassment, intimidation, and otherwise pressuring other Plaintiffs in this matter to "settle" their claims

through methods of stalking, intimidation and/or adverse employment action. *See* Declaration of Briggitte Donis ("Donis Decl.") ¶ 7-11. Plaintiffs contend that Defendants' *ex parte* communication with these collective members was improper because it was coercive, misleading, and yet again, a clear attempt to undermine the collective treatment of this case. In fact, Defendants themselves have agreed to issue some form of corrective notice as a result of this incident. *See* Kristensen Decl. ¶9.

As a result of Defendants' improper *ex parte* communications, Plaintiffs now seek an emergency order for the following relief: (1) invalidating the releases obtained as a result of the communication; (2) prohibiting Defendants or their counsel from communicating about this lawsuit or the claims or defenses asserted in it with any putative collective members; (3) corrective language in a communication to come directly from this Court; (4) awarding Plaintiffs the attorneys' fees and costs incurred in bringing this motion.

## II.   RELEVANT FACTUAL BACKGROUND

### A.   Procedural Background

On June 26, 2020, plaintiff Samantha Shafer filed this collective action. *See* Dkt. 1. Thereafter, the following opt in plaintiffs joined this matter: Ida Hurley (August 30, 2020, Dkt. 19 ); Alexis Jackson (Dkt. 21 ); Briggette Donis (May 17, 2021, Dkt. 62); Erika Hice (June 23, 2021, Dkt.83 ); Elianna Solis (June 23, 2021, Dkt. 72); Brittany Thomas (July 6, 2021, Dkt. 76).

On March 31, 2021, Plaintiffs filed a First Amended Complaint. Dkt.42 . Thereafter, the following additional opt-in plaintiffs joined this matter: (Marissa McElhaney (March 9, 2022, Dkt. 101) Alyzza Valtierra (March 9, 2022, Dkt. 101); Stephanie Munns (March 15, 2022, Dkt. 103); Alyxandra Mammensohn (March 17, 2022, Dkt. 104); Kayla White (March 22, 2022, Dkt. 105); LaShai Hunt (March 22, 2022, Dkt. 105 ); Kema Patterson (March 25, 2022; Dkt. 107); Anna Mia Caldwell Bresin (April 25, 2022, Dkt. 115 ); Daisy Resendez (April 26,

2022, Dkt. 116).

Defendants' **first** instance of misconduct occurred when Plaintiffs' counsel sought certification of this collective. Plaintiffs' counsel discovered that a significant amount of additional dancers were not disclosed by Defendants, after Defendants were ordered to produce them. As a result, Defendants were ordered by this Court to pay Plaintiffs' counsel $5,000.00 to cover the costs of notice and litigation expenses for the collective members. On or about November 9, 2021, the Parties were forced to file a joint stipulation to re-issue notice, solely as a result of Defendants' misconduct. *See* Dkt. 87.

Plaintiffs' underlying causes of action arise from Defendants' willful actions while Plaintiffs were employed by Defendants from approximately June 2017 to the present, wherein they were misclassified by Defendants as independent contractors, in direct violation of the FLSA. This misclassification resulted in Plaintiffs and the collective members not being paid their minimum wages, being forced to pay Defendants a "house fee," a "rental room fee," a "VIP Room fee," and other improper fees for the simple privilege of working at Defendants' club, Red Tie Gentlemen's Club. These fees are a mere shell for Defendants to charge and collect illegal kickbacks, and further, illegally abscond with Plaintiffs' hard-earned tips.

During their time being employed by Defendants, Plaintiffs were denied minimum wages as part of Defendants' scheme to misclassify Plaintiffs and other dancers/entertainers as independent contractors. This action was certified as a collective action on April 16, 2021. [Dkt. 54.]

Defendants are the owners, operators, and managers of Red Tie. Defendants Simoni and Goulding filed their Answer to the First Amended Complaint on May 14, 2021. [Dkt. 60.] On May 18, 2021, Defendants Red Tie, LLC and Mudaris filed their Answer to the First Amended Complaint.[ Dkt. 65.]

**B.     Illicit Solicitations in Lieu of Proper Litigation Procedures**

Previous to the egregious solicitations at the center of this motion, Plaintiff Samantha Shafer and Aeja Hurt too, suddenly and mysteriously "settled" their claims against Red Tie. Plaintiffs' Counsel had little to no notice that such discussions were taking place, and were completely bypassed in these settlement discussions. Shafer and Hurt were thereafter terminated from the collective class, eroding the collective in this litigation.

Defendants began their newest round of barrage of intimidation and improper conduct when they offered Ms. Hice $10,000.00, in exchange for a release of her FLSA claims. *See* Kristensen Decl. ¶2.

Such conduct is not only improper and offensive to the entire litigatory process, but also a complete subversion of the Court's supervisory, managerial, and administrative powers to control this litigation and collective action. 28 U.S.C. § 1331 preserves the principle that courts shall have the supremacy to provide for the orderly conduct of proceedings before the court and to control the conduct of persons connected with the judicial proceeding before it, particularly wherein those cases involve a principle of federal question; 28 U.S.C. § 1331. As Defendants' conduct is in direct and willful violation of this Court's administrative powers in adjourning FLSA matters, Plaintiffs, once again, require Court intervention in issuing a corrective notice.

To the extent Defendants have already attempted to force Ms. Hice, and other similarly situated Plaintiffs to dismiss their validly plead FLSA actions— based on the purported "settlement" of their FLSA claims, Plaintiffs' request the Court invalidate such a provision, without punishing Plaintiffs or requiring them to return the *severely* undervalued settlement funds from Defendants.

Similarly, the *ex parte* communications in which Defendants have and, further, continue to engage in, were not only improper, but were also grossly misleading.

Upon information and belief, Plaintiffs' counsel is aware that the attempted

"settlement papers" did not seek to settle, release, or waive Ms. Hice's claims under the FLSA, but nevertheless, attempts to force Ms. Hice to dismiss those claims without releasing them and/or without receiving additional or adequate compensation for such dismissal. Defendants and/or their counsel put forth effort to do this through a "cookie cutter" style of agreement—containing four nonsensical lines. Defendants and/or their counsel continue to use to induce other collective members drop their claims against Defendants. Furthermore, Plaintiffs Donis and Goodman, have all expressed fear of retaliation, actual instances of retaliation or both. *See* Kristensen Decl. ¶ .6

///

### 1. Plaintiff Erika Hice

On or around March 6, 2022, without prompting or previous suggestion, Plaintiffs' counsel received an email from Ms. Hice. Attached to the email was a photograph of a check from "Red Tie INC" in the amount of $10,000.00 with a memo line of "*For Settlement Lawsuit*." *See* Kristensen Decl. ¶ 2. On March 8, 2022, Ms. Hice sent another email containing what purported to be the text of a "settlement agreement." Attached to the email was a document which contained a pre-written, cookie-cutter disclaimer, robotically stating: "I have been paid for all hours that I worked at Red Tie Gentlemen's Club, at minimum wage times two, including all interest. I DO NOT [sic] want to participate in any lawsuit against RED TIE or its managers or owners. I want to dismiss my lawsuit, which is going forward in Federal Court. I am not giving anything up for signing this document other than acknowledging that I have been paid for all amounts due to me as an **employer** of RED TIE." *See* Kristensen Decl. ¶ 2, Ex. 1 (emphasis in capital letters, as written; emphasis in bold added).

Upon learning of these disturbing developments, Plaintiffs' counsel immediately reached out to other remaining Plaintiffs in this matter via phone call, text message, and email. Plaintiffs' counsel discovered that not only were

Defendants soliciting other Plaintiffs to settle outside of the litigation, but also, that multiple Plaintiffs reported that they were being stalked, harassed, followed, repeatedly contacted, and intimidated and more by staff and managers at Red Tie. *See* Kristensen Decl. ¶ 5.

On Monday April 4, 2022, Plaintiffs' counsel emailed Defendants' counsel stating their intent to file the instant motion pursuant to Local Rule 7-3. Plaintiffs' counsel also communicated that it was   contemplating filing a motion for an Order to Show Cause re Contempt as well. Most notably, Defendants did not respond to that email, nor did they deny the allegations that Defendants were attempting to "pick off" Plaintiffs by offering them under-valued "settlements." *See* Kristensen Decl. ¶ 9.

### 2.    Plaintiff Alizea Montiel

In reaching out to all Plaintiffs by text and via email, to investigate further attempts of Defendants' harassment of other Plaintiffs in this matter, Plaintiffs' counsel then became aware that Defendants' and/or their agents had communicated and solicited Ms. Montiel. The letter sent to Defendants' counsel on April 21, 2022 requested documentation evidencing a settlement accepted by Ms. Montiel. *See* Kristensen Decl. ¶ 10-11. Four days later, Defendants' counsel responded with "Received" and no other supportive documentation responsive to Plaintiffs' request. Thereafter, on May 10, 2022, Plaintiffs' counsel received a purported "settlement agreement" via email, between Ms. Montiel and Defendants. Attached to the email was a document which contained the very same, pre-written, cookie-cutter disclaimer, as Ms. Hice had sent, robotically stating: "I have been paid for all hours that I worked at Red Tie Gentlemen's Club, at minimum wage times two, including all interest. I DO NOT want to participate in any lawsuit against RED TIE or its managers or owners. I want to dismiss my lawsuit, which is going forward in Federal Court. I am not giving anything up for signing this document other than acknowledging that I have been

paid for all amounts due to me as an **employer** [sic] of RED TIE." *See* Kristensen Decl. ¶8, Ex. 6 (emphasis in capital letters, as written; emphasis in bold added).

In further investigating Defendants improper solicitations, Plaintiffs' counsel followed up again via a meet and confer by phone and email, again reiterating the demand for copies of these documents. To date, they have not produced complete responses and/or all documents responsive to Plaintiffs request. By refusing to provide documentation and allowing Defendants to engage in solicitation efforts in both the state proceeding and in this one, Defendants' counsel are promoting efforts to mislead Plaintiffs' counsel in furtherance of Defendants' surreptitious efforts to "pick off" Plaintiffs in the collective lawsuit.

Where a trial court identifies a potential for abuse, the court "'has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel'" and parties. (*See Slavkov v. Fast Water Heater* at p. 579.)

Along with issuing appropriate corrective notice, the Court should likewise explicitly prohibit Defendants from communicating with the existing collective members, and further, prohibit them from communicating with other potential collective members about settling their claims, as well as order Defendants to provide Plaintiffs' counsel with the names and contact information of all dancers for whom they have contacted that were not previously produced and approve Plaintiffs' counsel's proposed corrective notice to be sent by first class mail, email, and by text message. *See* Kristensen Decl. ¶ 12, Ex. 8.

**C.    Insufficient terms of the purported "settlement agreements"**

In a hastily written paragraph, purported to outline the terms of "settlement agreement," both Ms. Hice and Ms. Montiel request to "dismiss [my] lawsuit, which is going forward in Federal Court. I am not giving anything up for signing this document other than acknowledging that I have been paid for all amounts due to me as an **employer** [sic] of RED TIE." Neither Ms. Hice nor Ms. Montiel have

ever been "employers" of Red Tie. The contract is further wholly insufficient as it does not address or seek to settle, release, or waive Ms. Hice's nor Ms. Montiel's claims under the FLSA, but nevertheless, attempts to force these Plaintiffs to dismiss those claims without releasing them and/or without receiving additional compensation for such dismissal.

### D. Subversion of Proper Court Approval of Such FLSA "settlement agreements"

The terms of the collective "settlement agreement" have not had the judicial oversight of this Court, nor were both contracting parties represented by counsel. In fact, the very natures of the "settlement agreements" prey on Plaintiffs' vulnerability and latch onto subverting the attorney-client relationship in order to gain Plaintiffs cooperation in making these "settlements." Ms. Hice worked at Defendants' club from July 2017 to November 2020. On average, Ms. Hice worked 8-hour shifts, 3-4 times a week for Defendants. In working for Defendants, Ms. Hice was misclassified, subjected to paying house fees, and was not paid minimum wages pursuant to the FLSA. As a result, her calculation of damages is *at least* in the amount of**: $61,248.00,** taking into account her liquidated damages as a result of misclassification. In further consideration of her right to attorneys' fees and costs should she prevail on the underlying action, Ms. Hice's damages are even greater. This calculation is summarized by factoring in the 3-4 times a week Ms. Hice worked at Red Tie for an average of thirty-two (32) months. Therefore, it is clearly established her that Ms. Hice's $10,000.00 "settlement agreement" is indeed *severely undervalued,* manipulative, and preys upon Plaintiffs' vulnerable position.

The law specifically provides protection for precisely the situation that has occurred above. The principle that one cannot consent to work for less than what is prescribed by FLSA, so as to prevent circumvention of the Act, is long-established. *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 62 S. Ct. 1216,

86 L. Ed. 1682 (1942).  For similar reasons, courts have also imposed strict limitations on when and how claims under the Act can be settled.  Nearly sixty (60) years ago, in *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65 S. Ct. 895, 89 L. Ed. 1296 (1945)*,  and its companion case, *Maddrix v. Dize,* 153 F.2d 274 (4th Cir. 1946)the Court held that "in the absence of a bona fide dispute between the parties as to liability," one cannot release one's right to liquidated damages under § 16(b).1 324 U.S. 697, 704 (1945). Private "waivers" of rights guaranteed under the FLSA are routinely rejected by Courts as an attempt to "thwart the legislative policy [FLSA] was designed to effectuate" by enabling employers to utilize their superior bargaining power to circumvent the FLSA by means of individual waivers.  *Brooklyn Sav. Bank*, 324 U.S. at 704-07. *See* also: *Edwards v. Arthur Andersen* 44 Cal. 4th 937, 189 P.3d 285, 81 Cal. Rptr. 3d 282 (As Plaintiff points out, such a broad waiver includes claims under California Labor Code § 2802, which, pursuant to Labor Code § 2804 are unwaivable ) *See* also: Cal. Labor Code § 2804 ("Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void.").

In the spirit of this case law and public policy, the FLSA requires, and Courts in this Circuit follow, that any "settlements" even where made by/to individual members, must be evaluated by this Court for "a fair and reasonable resolution." The Eleventh Circuit has held, and the Ninth Circuit has followed, that FLSA collective action settlements generally must be supervised by either the Court or the United States Department of Labor. *(Lynn's Food Stores Inc. v. Dep't of Labor* (11th Cir. 1982) 679 F.2d 1350, 1352-53.) District courts in the Ninth Circuit generally follow this procedure. (*See*, e.g., *Lee v. The Timberland Co.,* (N.D.Cal. 2008) 2008 WL 2492295, *2 ("[T]he proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness."); *See* also *Yue Zhou*

*v. Wang's Restaurant* (N.D.Cal. Jan. 17, 2007) No. C 05-0279 PVT, 2007 WL 172308, *1 (("The proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness.").) Approval requires the court to "first determine whether the settlement involves the resolution of a bona fide dispute over an FLSA provision, and then decide whether the settlement is fair and reasonable." (*Camp v. Progressive Corp.* (E.D. La. Sept. 23, 2004) No. Civ. 01-2680, 2004 WL 2149070, *4.) There is a strong presumption that a proposed settlement is entitled to a finding of fairness. One court has noted that "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." (*Bonetti v. Embarq Management Co.* (M.D.Fla. 2009) 715 F.Supp.2d 1222, 1227.) All the district courts within the Ninth Circuit to address the issue appear to follow *Lynn's Food*[,]" a case from the Eleventh Circuit Court of Appeals.  *Almodova v. City & Cty. of Honolulu, Civ.* No. 07-00378 DAE-LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010), report and recommendation adopted, Civ. No. 0700378 DAE-LEK, 2010 WL 1644971 (D. Haw. Apr. 20, 2010) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-1354 (11th Cir. 1982)).

Under *Lynn's Food*, in determining whether to approve the FLSA settlement, "[t]he court must determine that the proposed settlement 'is a fair and reasonable resolution [sic] of a bona fide dispute over FLSA provisions.'" *Almodova*, 2010 WL 1372298, at *3 stating "This Court finds case law from the district courts within the Ninth Circuit persuasive and shall conduct an analysis under the *Lynn's Food* standard to determine whether to approve the FLSA Settlement Agreement currently before this Court." *Id.*

### III. ARGUMENTS

#### A. Legal Principles Controlling this Court's Oversight of

### Unauthorized *Ex-Parte* Communications with Collective Members

This Court has explicit authority to oversee unauthorized *ex*-parte communications with collective members. Case law protects Plaintiffs from precisely the unauthorized *ex*-parte communications that have occurred in this matter. Defendants intentionally sent agents on multiple occasions to solicit the named Plaintiffs in this collective action, knowing they were represented by counsel at the time, to induce and intimidate them into dropping their "lawsuit in Federal Court. Defendants' sole purpose in doing so was to erode the collective action. Defendants continue to wage their campaign of intimidation for that same purpose—to destroy the efficacy of the judicial proceeding held against them. Even worse than simply contacting unrepresented class members, Defendants improperly solicited collective members who were Plaintiffs and represented by Counsel, to completely undermine the Court's inherent authority to manage the case before it. This court's authority to manage, and further, entirely limit a party's communication with the collective members, applies in FLSA 216(b) collective actions with equal force as Rule 23 class cases. This Court does not distinguish differences in authority simply because a group of Plaintiffs are categorized as a collective or a class.

This long-held authority is established most concretely in the landmark case, *Gulf Oil Co. v. Bernard* 452 U.S. 89, 104 (1981), wherein the Supreme Court "recognized the potential for abuse in communication with potential class members and the district court's authority to enter orders limiting such communication where needed." *Weller v. Dollar Gen. Corp.,* No. CV 17-2292, 2019 WL 1045960 (E.D. Pa. Mar. 4, 2019) (citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 104 (1981)); see also *In re School Asbestos Litigation*, 842 F.2d 671, 683 (3d Cir. 1988) (invoking Rule 23's "dual policies of protecting the interests of absent class members while fostering the fair and efficient resolution of numerous

claims involving common issues" and holding the court had discretion under *Gulf Oil* to manage misleading and confusing communication with putative class members). (*See* also: *Kutzman v. Derrel's Mini Storage, Inc.,* No. 1:18-CV-755 AWI-JLT, 2018 WL 11389263, at *1 (E.D. Cal. Dec. 19, 2018)wherein the Court established Employer's ex parte settlement offers to putative class members were misleading and coercive such that court could intervene to protect the putative class members, although employer at times took steps to inform them about the wage and hour suit in plain, neutral terms, where information was not consistently presented, communications contained misstatements, putative class members were not apprised of the status of the case, communications did not contain a copy of the complaint and omitted court information, and communications contained a number of slights, disparaging remarks, and off-handed comments. Fed. R. Civ. P. 23(c)(2)(b).)

Further, in *Gulf Oil*, the Supreme Court noted that because class actions present opportunities for abuse and problems in case management, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *See* also: "when a party engages in behavior that threatens the fairness of the litigation," the court has "both the duty and the broad authority [to] regulate of the notice and opt-out processes and impose limitations" on the parties. *Gulf Oil*, 452 U.S. at 100, 101 S.Ct. 2193; *Wang v. Chinese Daily News, Inc*., 623 F.3d 743, 756 (9th Cir. 2010), judgment vacated on other grounds, 565 U.S. 801, 132 S.Ct. 74, 181 L.Ed.2d 1 (2011); Rule 23(d)(1)1 (granting authority to "impose conditions on the representative parties ... or deal with similar procedural matters."); see also Adv. Comm. Notes to Rule 23 ("Subdivision (d) is concerned with the fair and efficient conduct of the action[.]"); Manual Complex Lit. § 21.12 (4th ed.) ("Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing

settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a [Rule 23(b)(3) ] class ....”). *Id.*

The Supreme Court went on to hold that: an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . In addition, such a weighting – identifying the potential abuses being addressed – should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances. 452 U.S. at 101-02; (*Hernandez v. Vitamin Shoppe Industries Inc.* (2009) 174 Cal. App. 4th 1441, 1454; see also *S.F. Unif. Sch. Dist. ex rel. Contreras v. First Student, Inc.* (2013) 213 Cal. App. 4th 1212, 1227 [court can invoke “inherent power to control the proceedings before it” under § 128].)

In *Hernandez v. Vitamin Shoppe Industries Inc.* when the lead plaintiff in a class action was about to settle, her attorney wrote to other class members to urge them to opt out and to retain him to represent them in a separate class action asserting the same claims against the same defendant. *(Id.* at pp. 1444-1447.) The trial court ordered the attorney not to communicate with such class members and ordered monetary sanctions against the offending counsel. (*Id.* at pp. 1448-1449.) The appellate court sustained the order limiting communications, citing to the court’s inherent authority to supervise and administer cases before them, but reversed the part of the order imposing sanctions on the grounds that the version of section 128 in place at the time did not provide the court with the power to impose sanctions. 3 (*Id*. at p. 1452.)

Here, Defendants’ conduct was **far worse** than the violating party’s conduct in Hernandez.

Defendants and/or their counsel’s conduct in soliciting Plaintiffs, including

but not limited to Ms. Hice and Ms. Montiel, *ex parte* is egregious, offensive to the adverse litigation process, and undermines the Court's authority to supervise and oversee this case, both as to their individual claims and as to the collective action allegations, which fall under higher scrutiny than even a punitive class.

**B.      Legal Principles Controlling this Court's Oversight of Coercive, Misleading or Otherwise Improper Solicitations**

Quite simply, Defendants do not have any semblance of respect for the procedures of the Court, and their counsel continues to promote Defendants' actions. Defendants' behavior goes beyond even the highest limits established by current case law, so much so that their behavior warrants immediate judicial intervention and estoppel. Specific case law applicable in the Ninth Circuit details how the Court can establish authority and oversight over communications that are coercive, misleading or otherwise improper.

As established in *Kleiner v. The First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1202 (11th Cir. 1985) "a unilateral communications scheme, moreover, is rife with potential for coercion. "[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." As stated above, the Ninth Circuit has followed the Eleventh Circuit on this subject.

As far as FLSA collective actions are concerned, the Supreme Court has held that Federal Rule of Procedure 83 "endorses measures to regulate the actions of the parties to a multiparty suit." *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 172 (1989); see also *Digidio v. Crazy Horse Saloon & Rest., Inc.,* 880 F.3d 135, 143 (4th Cir. 2018) ("When it comes to FLSA collective actions, the mechanism by which parties join an ongoing lawsuit reposes in district courts the responsibility to supervise and manage contacts with potential plaintiffs.") As in Rule 23 cases, courts have broad authority to manage the conduct of counsel and parties in FLSA collective actions. ("[B]ecause of the potential for abuses in

collective actions, such as unapproved, misleading communications to absent class members, 'a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'") (quoting *Gulf Oil,* 452 U.S. at 100). "Such managerial responsibility begins once the collective action is filed, before the court conditionally certifies the class or authorizes a section 216(b) notice." (citing *Hoffmann-La Roche*, 493 U.S. at 170-71). *See* also: "Courts applying the Gulf Oil standard have found that ex parte communications soliciting opt-outs, or even simply discouraging participation in a case, undermine the purposes of Rule 23 and require curative action by the court." *Guifu Li v. A Perfect Day Franchise, Inc.,* 270 F.R.D. 509, 517 (N.D. Cal. 2010); see also *Hoffman La Roche v. Sperling,* 493 U.S. 165, 173 (1989) (extending the reasoning of *Gulf Oil* to collective actions). In the context of class action litigation, whether pre- or post-certification unsupervised communications between an employer and its workers present an acute risk of coercion and abuse. *See Guifu Li,* 270 F.R.D. at 517.

Likewise, courts also scrutinize the context of the communication in deciding whether or not to manage a party's communication with putative plaintiffs. *See*, *e.g.*, *Kleiner,* 751 F.2d at 1202;) ("It is difficult to conceive of any advice from [defendant] regarding the lawsuit that is not rife with the potential for confusion and abuse given [defendant]'s interest in the suit."). "If the class and class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive."*Id.* "The context here is of particular concern, as 'an employment relationship exists between the parties, which itself may increase the risk that communications will have a coercive effect.'" *See Bass v. Pjcomn Acquisition Corp*., 2011 WL 902022, *4 (D. Colo. Mar. 14, 2011) (citing *Belt,* 299 F.Supp.2d at 268).

Here Defendants' conduct is far worse than the conduct described in *Kleiner.* Defendants are going as far as to stalk, harass, intimidate, spy on and

pressure already vulnerable plaintiffs into signing a purported "settlement agreement." In fact, Defendants conduct is so openly taunting of the jurisdiction of the Court, they even used the same misspelled, invalid "agreement" on Ms. Montiel, after being warned of their conduct with Ms. Hice.

Further, the *Kleiner* court laid out four criteria for evaluating the existence of good cause to support an order limiting communications between a class and class opponents: (1) the severity and the likelihood of the perceived harm; (2) the precision with which the order is drawn; (3) the availability of a less onerous alternative; and (4) the duration of the order.  *Id.* at 751 F.2d at 1206.

The continuous and improper actions of Defendants show that good cause exists to limit, and even prohibit the communications. Defendants openly erode the litigatory process and do so unabashedly, with no fear of discipline, where discipline is clearly warranted.

As a result of Defendants' actions, two (2) Plaintiffs have already been "picked off" with many more being directly intimidated. A precise order can be easily drafted to address the types of communications prohibited, and the duration for which they should be prohibited. The *Kleiner* test was established for just such situations.

C.    **This Court Must Order Corrective Notice Where the *Ex Parte* Communications Are Misleading, Coercive, or Attempts to Undermine the Collective Action or Confidence in Plaintiffs' Counsel**

The Court has the authority to order corrective notice where the *ex-parte* communications are misleading, coercive and attempts to undermine the collective action or confidence in the action.  The *Kutzman* Court established that the "proper remedy for employer's improper *ex parte* settlement communications with putative wage and hour class was to issue curative notice to class and render settlement agreements voidable; slights and off-handed remarks in employer's

communications could be easily removed, and notice could include proper contact information and statement of the case, along with separate statement to class members indicating that settlements were voidable under Fed. R. Civ. P. 23(c)(2)(b)." *See* also: *Johnson v. Serenity Transportation, Inc.,* 141 F. Supp. 3d 974 (N.D. Cal. 2015) "Because the Court finds that Serenity actively discouraged its current drivers from participating in this lawsuit, their releases must be invalidated and curative notice issued. *See Guifu Li,* 270 F.R.D. at 517-519 (invalidating opt-out forms when defendant employer presented the forms in mandatory one-on-one meetings during work hours); see also *Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. Apr. 15, 2014) (invalidating releases when plaintiffs received a letter stating defendants business would close and everyone would lose their jobs if plaintiffs participated in the lawsuit)."

As explained in detail above, the method, pattern, and substance of the Defendants' communication is profoundly improper, coercive and acts with the sole purpose of intimidating the collective Plaintiffs in this action. The behavior displayed is replicative of the same disregard these Defendants had for the Courts jurisdiction the first time judicial intervention was sought in this matter. Defendants shamelessly misled Ms. Hice, in her vulnerable position, to believe that she can be made whole with acceptance of a severely undervalued settlement, comprising less than 1/6th of what she is owed pursuant to her FLSA claims.

While a district court's authority to manage and supervise those contacts is broad, it is not limitless. Citing *Gulf Oil,* 452 U.S. at 101; *Stransky*, 929 F.Supp.2d at 1105-06.  Any order that this Court issues must be based on a clear record and specific findings, and it must be balanced against the parties' rights of free speech and association.  *See Id.*

However, this balancing test specifically carves out exceptions where that speech is **coercive or misleading.** *See Kleiner*, 751 F.2d at 1204 (citing *Central Hudson Gas Co. v. Public Service Commission*, 447 U.S. 557, 566 (1980) and

*Virginia State Board of Pharmacy v. Virginia Citizens Council*, 425 U.S. 748, 771 (1976)) wherein the Court held that "untruthful or misleading speech has no claim on first amendment immunity." The Court in *Gulf Oil* establishes this balancing test of free speech as it is juxtaposed against misleading or coercive speech in a collective action. In *Gulf Oil,* the Court holds that "before a class is certified, counsel for both parties maintain a free-speech right to communicate with putative class members, ex parte, about the lawsuit—including a right to offer to settle. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99-100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981); see also *Retiree Support Grp. of Contra Costa Cty. v. Contra Costa Cty.*, 2016 WL 4080294, at *6 (N.D. Cal. July 29, 2016) ("The parties (and non-parties) are free to encourage class members to opt out of or vote against a class action settlement, provided they do so in a fair manner that avoids material misrepresentations or omissions.").

However, "when a party engages in behavior that threatens the fairness of the litigation," the court has "both the duty and the broad authority [to] regulate of the notice and opt-out processes and impose limitations" on the parties. *Gulf Oil*, 452 U.S. at 100, 101 S.Ct. 2193;  *Wang v. Chinese Daily News, Inc.,* 623 F.3d 743, 756 (9th Cir. 2010), judgment vacated on other grounds, 565 U.S. 801, 132 S.Ct. 74, 181 L.Ed.2d 1 (2011); Rule 23(d)(1)1 (granting authority to "impose conditions on the representative parties ... or deal with similar procedural matters."); see also *Adv. Comm. Notes to Rule 23 ("Subdivision (d)* is concerned with the fair and efficient conduct of the action[.]"); Manual Complex Lit. § 21.12 (4th ed.) ("Defendants and their counsel generally may communicate with potential class members in the ordinary course of business, including discussing settlement before certification, but may not give false, misleading, or intimidating information, conceal material information, or attempt to influence the decision about whether to request exclusion from a [Rule 23(b)(3) ] class.")

Further, Defendants have repeated those very same wrongful actions pursuant to their conduct with Ms. Montiel. Without immediate intervention and corrective action by this Court, Defendants will continue their attempts to erode the core of the collective class, in flagrant violation and disregard for the judicial processes and jurisdiction of this Court.

Further, in *Kleiner*, the court noted that "[w]hen confronted with claims pressed by a plaintiff class, it is obviously in defendants' interest to diminish the size of the class and thus the range of potential liability by soliciting exclusion requests . . . [s]uch conduct reduces the effectiveness of the 23(b)(3) class action for no reason except to undermine the purposes of the rule." 751 F.2d at 1202-03. The *Kleiner* court recognized that in an employer-employee relationship, the risk of coercion and abuse is particularly high when an employer solicits opt-outs from employees. *Id*.

Here, Defendants have engaged in conduct that the *Kleiner* court has precisely disavowed: they have openly solicited Plaintiffs to settle their claims outside of the litigation to erode and destroy the collective.

Defendants' coercive techniques are clear. Defendants have called Plaintiffs, repeatedly, to convince them that they would benefit from dropping their claims against Defendants. They have harassed Plaintiffs. They have stalked Plaintiffs. They have intimidated Plaintiffs. They have gone far beyond even the most egregious behaviors discusses in *Kleiner* or *Wang*. Defendants' communication with collective members is profoundly improper because it misrepresents the facts and misleads putative class members in an effort to subvert the entire judicial process. The case law nearly universally observes that employer-employee contact is particularly prone to coercion, and the purported "settlement agreements" are a direct result of that coercion.

Courts have noted that while the Ninth Circuit had not yet adopted a standard to determine what constitutes a false or misleading offer to settle, "surely

that test is concomitant with the potential for abuse in the communications, including being misled about the strength and extent of their claims.  The putative class members can be misled through omissions and failure to provide enough information, which can include the failure to append the Plaintiffs' complaint to a settlement offer." *Id.*

Nowhere in these purported "settlement agreements" does it state that the settlement agreements must be approved by the Court. Defendants hide this fact as a means to mislead Plaintiffs about the true nature of their intentions, the litigatory process and further do so as a means to try to convince Plaintiffs that can simply walk away from their "lawsuit in Federal Court."

**D.    The Court Must Issue Corrective Notice to Address Defendants' Misleading, Harassing and Coercive Behavior**

In consideration of the conduct of Defendants, the Court must permit Plaintiffs to issue corrective notice. Defendants sent their agents to solicit named Plaintiffs in this action, and likely putative collective members as well. They made materially misleading statements that are evidenced by the "settlement agreement" sent to Plaintiffs' counsel for Ms. Hice and Ms. Montiel.  Furthermore, Ms. Goodman, Ms. Patterson, Ms. Valtierra, and Ms. Donis report campaigns of continued harassment and intimidation in order to get them to drop their participation in the federal action before this court.

Accordingly, Defendants' and/or their counsel's *ex parte* communications, in addition to undermining the Court's authority to control matters on its docket and potentially violating the rules of professional conduct, materially misled Ms. Hice and Ms. Montiel into thinking that they could settle their FLSA claims without this Court's approval. That misleading communication was further compounded by Defendants' and/or their counsel's material omission that the "settlement agreements" need not be approved by the Court. From start to finish, Defendants' and/or their counsel's attempt to "buy off" Ms. Hice and Ms.

Montiel, was rampant with intentionally misleading, forced and intimidating communications. Given the cookie-cutter nature of the purported "settlement agreement", it is probable that Defendants and/or their counsel have tried to do the same with unidentified potential collective members or will try to do same with those workers in the future.

Further, because it is Defendants that have not sought Court ordered approval, Ms. Hice does not seek to invalidate her "settlement;" rather, to the extent that Defendants try to hold the Plaintiffs "request" for a "dismissal" of their lawsuit Plaintiffs' counsel requests that those provisions be unenforceable. Ms. Hice should not be punished by being required to return her $10,000.00 "settlement," elicited from her only through the coercion and intimidation of Ms. Hice's vulnerable position, as this check can act as an offset of her potential future recovery against Defendants. *See Cheverez v. Plains all Am. Pipeline*, LP, No. CV15-4113 PSG (JEMX), 2016 WL 861107, at *1 (C.D. Cal. Mar. 3, 2016) (citing *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on Apr. 20, 2010* (E.D.La. Fe. 2, 2011)) ["Any checks cashed will be deducted from any recovery . . . ."].)

Plaintiff's counsel requests that the Court order Defendants and their counsel to cease all communications with named and unnamed Plaintiffs about the lawsuit and/or about settling their claims under the FLSA. In furtherance of such an order, Plaintiff's counsel also requests issuance of a corrective notice to Ms. Hice, Ms. Montiel, and the other collective members. *See* Kristensen Decl. ¶11-13. Ex. 9.

Given Defendants' grossly violative conduct to date, the Court should order corrective notice. Courts routinely order such notice under less-egregious facts, to adequately inform the current and potential collective class about the case, corrective action taken by the court, and laws prohibiting retaliation. *See* e.g., *Marino,* 2017 WL 1540717, at *4; *Cheverez,* 2016 WL 861107, at *6; *Guifu Li,*

270 F.R.D. at 518-19. The Court should also order Defendants to reimburse Plaintiff's Counsel for the costs of printing and mailing the corrective notice. (*See* e.g.*, Marino,* 2017 WL 1540717, at *3.

///

## IV. CONCLUSION

Defendants' and/or their counsel's *ex parte* communications and solicitations of collective Plaintiffs were inappropriate, abusive of the adversarial system, materially misleading and completely dismissive and disrespectful to the jurisdiction of this Court, yet again.

Defendants provided blatantly false information to both Ms. Hice and Ms. Montiel, stalked, harassed, intimidated and annoyed Ms. Donis and Ms. Goodman, omitted material information regarding the procedures for the lawfully recognized settlement process, attempted to "settle" FLSA claims without required court approval. Defendants' and/or their counsel did all of this by inappropriately soliciting, or further, sending their agents to solicit Plaintiffs without Plaintiffs' counsel's knowledge.

Defendants' and/or their counsel's grossly improper behavior and willful actions are intended to subvert the Court's authority to manage the litigation and oversee the conduct of the parties before it. It acts to undermine the basic adversarial litigation process and to erode at the procedural and jurisdictional safeguards put in place by statutory regulations and ample case law. To the extent Defendants attempt to force Ms. Hice and/or Ms. Montiel to dismiss their FLSA claims on "mootness" grounds, Plaintiffs' counsel requests the Court invalidate such a provision of the purported "settlement agreement."

In view of all factors presented, this Court should order that Defendants and their counsel are not permitted to speak with any of the opt-in Plaintiffs currently a part of this action, and further prohibit them from communicating with any potential collective members about the lawsuit and/or about settling claims.

The Court should also approve/adopt Plaintiffs' proposed corrective action notice to be sent to the collective members, and any potential collective members, to prevent harm and prejudice resulting from similarly misleading communications or "settlement attempts" with those dancers. Plaintiffs further request all such and other relief to which they may be entitled in law or equity.

Dated:  May 23, 2022                    Respectfully submitted,

                                        **CARPENTER & ZUCKERMAN**

                            By:     */s/ John P. Kristensen*
                                _____
                                John P. Kristensen (SBN 224132)
                                Jesenia A. Martinez (SBN 316969)
                                Alina S. Vulic (SBN 337080)

                                ***Attorneys for Plaintiffs***