# EXHIBIT 2

ectronically FILED by Superior Court of California, County of Los Angeles on 03/29/2022 04:31 PM Sherri R. Carter, Executive Officer/Clerk of Court, by K. Valenzuela, Deputy Clerk

Jeffrey C. Bogert (SBN 132778)
**McDONALD WORLEY**
827 Morgan Drive
Los Angeles, California 90049
Tel : (424) 293-2272
bogertlaw@outlook.com

William M. Hogg (SBN 338196)
**HODGES & FOTY, LLP**
4409 Montrose Blvd., Ste. 200
Houston, Texas 77006
Tel: (713) 523-0001; Fax: (713) 523-1116
whogg@hftrialfirm.com

*Attorneys for Toya Carter and the Class Members*

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| TOYA CARTER, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>     vs.<br><br>RED TIE, INC. D/B/A RED TIE GENTLEMAN'S CLUB and MIKE MUDARIS,<br><br>            Defendants. | Case No: 19STCV32364<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE AND FOR CORRECTIVE NOTICE TO PUTATIVE CLASS MEMBERS**<br><br>Judge:           Hon. Yvette Palazuelos<br>Department:  9<br>Date:            June 22, 2022<br>Time:           10:00 a.m. PST |

-i-

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE
*Carter v. Red Tie, Inc. et al*, Case No. 19STCV32364

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND ................................................. 2

  A.  Procedural background. ......................................................................... 2

  B.  Settlement negotiation practice and Defendants' illicit solicitations. ............................. 3

  C.  Terms of the purported "settlement." ................................................... 5

III. THE COURT SHOULD ORDER DEFENDANTS TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CONTEMPT FOR IMPROPERLY SOLICITING A REPRESENTED PARTY ...................... 7

IV.  THE COURT SHOULD ORDER THAT CORRECTIVE NOTICE IS APPROPRIATE TO BE SENT TO THE PUTATIVE CLASS MEMBERS TO ADDRESS DEFENDANTS' MISLEADING AND COERCIVE BEHAVIOR EXHIBITED TOWARD MS. CARTER. ............................. 9

V.   CONCLUSION ............................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*24 Hour Fitness, Inc. v. Superior Court*
(1998) 66 Cal. App. 4th 1199 ................................................................... 6

*Bauguess v. Paine*
(1978) 22 Cal. 3d 626 ............................................................................... 8

*Cheverez v. Plains All American Pipeline, LP*
(C.D. Cal. Mar. 3, 2016) No. CV15-4113 PSG (JEMx), 2016 WL 861107 ................. 10, 11, 13

*County of Santa Clara v. Astra USA, Inc.*
(N.D. Cal. July 8, 2010) No. C 05-03740 WHA, 2010 WL 2724512 ............................. 10, 11, 13

*Dynamex Operations West, Inc. v. Superior Court*
(2018) 4 Cal. 5th 903 ............................................................................... 3

*Guifu Li v. A Perfect Day Franchise, Inc.*
(N.D. Cal. 2010) 270 F.R.D. 509 ............................................................. 11, 13

*Hernandez v. Vitamin Shoppe Industries Inc.*
(2009) 174 Cal. App. 4th 1441 ................................................................. 8, 9

*Howard Gunty Profit Sharing Plan v. Superior Court*
(2001) 88 Cal. App. 4th 572 ..................................................................... 8

*In re City of Redondo Beach FLSA Litig.*
(C.D. Cal. Mar. 16, 2021) No. 2:17-cv-090970ODW (SKx), 2021 WL 1010631 ................ 12

-ii-

*Marino v. CACafe, Inc.*
  (N.D. Cal. Apr. 28, 2017) No. 16-CV-6291 YGR, 2017 WL 1540717.......................... 10, 11, 13

*Mastrubuono v. Shearson Lehman Hutton*
  (1995) 514 U.S. 52 ................................................................................................................ 6

*Olmstead v. Arthur J. Gallagher & Co.*
  (2004) 32 Cal. 4th 804 ........................................................................................................ 8

*Patterson v. Superior Court*
  (2021) 70 Cal. App. 5th 473 ............................................................................................... 6

*Romero v. May Trucking Co.*
  (C.D. Cal. Feb. 21, 2018) No. EDCV 17-2406 JGB, 2018 WL 5905604 .................................. 10

*Rutherford v. Owens-Illinois, Inc.*
  (1997) 16 Cal. 4th 953 ........................................................................................................ 1

*S.F. Unif. Sch. Dist. ex rel. Contreras v. First Student, Inc.*
  (2013) 213 Cal. App. 4th 1212 ............................................................................................ 8

*Selk v. Pioneers Mem'l Healthcare Dist.*
  (S.D. Cal. 2016) 159 F. Supp. 3d 1164................................................................................. 12

*Slavkov v. Fast Water Heater Partners I, LP*
  (N.D. Cal. Nov. 2, 2015) No. 14-CV-04324-JST, 2015 WL 6674575 ................................. 10, 11

*Stephen Sleginger, Inc. v. Walt Disney Co.*
  (2007) 155 Cal. App. 4th 736 .............................................................................................. 1

*Zalkind v. Ceradyne, Inc.*
  (2011) 194 Cal. App. 4th 1010 ............................................................................................ 5

**Statutes**

29 U.S.C. § 201, *et seq.*.............................................................................................. passim

California Assembly Bill 5 ......................................................................................................... 3

Civ. Code § 1654 ....................................................................................................................... 6

Code of Civil Procedure 128........................................................................................................ 8, 9

Code of Civil Procedure 128.5..................................................................................................... 9

Labor Code § 1194 .................................................................................................................... 6

**Treatises**

Manual for Complex Lit. § 21.12 ............................................................................................. 10

## I.    **INTRODUCTION**

Counsel for Plaintiff Toya Carter respectfully requests the Court to issue an order directing Defendants Red Tie, Inc. d/b/a Red Tie Gentleman's Club and Mike Mudaris (collectively "Defendants") to show cause why they should not be held in contempt of this Court. Defendants and/or Defense Counsel attempted to induce Ms. Carter into "settling" her minimum wage claims under the Fair Labor Standards Act ("FLSA") by repeatedly sending agents to speak with Ms. Carter *ex parte*, without her counsel's knowledge, and soliciting her to "release" her FLSA claims for pennies on the dollar.[1] Defendants offered Ms. Carter a $15,000.00 cashier's check in exchange for a release of her FLSA claims. Despite the fact that Ms. Carter did not assert FLSA claims in this Action, the clear language of that purported "agreement" indicates that Defendants will seek to dismiss, either in whole or in part, Ms. Carter's minimum wage claims brought pursuant to the California Labor Code and/or the Business and Professions Code in this Action based on the FLSA "settlement" that was procured from Ms. Carter.

Such conduct is not only offensive to the adversarial litigation process, but is an affront to this Court's supervisory, managerial, and administrative powers to control this litigation and putative class action. (*Stephen Sleginger, Inc. v. Walt Disney Co.* (2007) 155 Cal. App. 4th 736, 758, citing *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal. 4th 953, 967.) Accordingly, the Court should issue an order requiring Defendants to show cause why they should not be held in contempt for attempting to solicit Ms. Carter *ex parte* even though they knew she was represented by counsel, as well as subverting the Court's supervisory powers, administrative powers, and/or the inherent power to control litigation before it.

The extraordinary circumstances underlying Defendants' and/or Defense Counsel's attempt to illicitly procure an *ex parte* release from Ms. Carter of her FLSA claims that were not asserted in this Action, with the intent to utilize such a "release" to seek dismissal of her live Labor Code claims that were actually asserted here, requires Court intervention. While Plaintiff's Counsel does not seek to invalidate the entire agreement at this time because the FLSA claims

---

[1] A true and correct copy of the purported "settlement" is attached as Exhibit 2 to the Declaration of William Hogg.

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE
*Carter v. Red Tie, Inc. et al*, Case No. 19STCV32364

1  are not presently before the Court, to the extent Defendants attempt to force Plaintiff to dismiss
2  her Labor Code claims based on the purported "settlement" of FLSA claims, Plaintiff's Counsel
3  requests the Court invalidate such a provision.

4    Moreover, such *ex parte* communications were not only improper, but were also grossly
5  misleading. Namely, Defendants' communication and attempted settlement of Ms. Carter's FLSA
6  claims for minimum wages require court approval, which Defendants did not communicate to
7  Ms. Carter. The attempted settlement papers also did not seek to settle, release, or waive Ms.
8  Carter's claims under the California Labor Code, but nevertheless attempts to force Ms. Carter to
9  dismiss those claims without releasing them and/or without receiving additional compensation
10 for such dismissal. Defendants and/or Defense Counsel attempt to do this through a "cookie
11 cutter" style of agreement, which Defendants and/or Defense Counsel have likely or will likely
12 attempt to induce other putative class members to sign. Courts in similar circumstances have
13 required corrective notice be sent to the putative class members, at defendants' expense. The
14 Court likewise should order that corrective notice is appropriate here, order Defendants not to
15 communicate with potential class members about settling their claims, order Defendants to
16 provide Plaintiff's Counsel with the names and contact information of the putative class members,
17 and approve Plaintiff's Counsel's proposed corrective notice[2] to be sent by first class mail, email,
18 and by text message.

19 **II.**     **RELEVANT FACTUAL BACKGROUND**

20      **A.**     **Procedural background.**

21      Ms. Carter filed her Class Action Complaint in the Superior Court of California for the
22 County of Los Angeles on September 5, 2019. Plaintiff and a putative class of individuals worked
23 at the Red Tie Gentleman's Club as exotic dancers. Ms. Carter and the putative class members,
24 are and were misclassified by Defendants as "independent contractors," were not paid any wages,
25 were forced to pay Defendants a "house fee," "rental room fee," a "VIP room fee," and other
26
27

28  [2] A true and correct copy of that proposed corrective notice is attached to this Motion as Exhibit A. The proposed language for the text message is included in the proposed order attached herein.

-2-

1  various fees for the privilege of working at Red Tie Gentleman's Club, and were not provided

2  meal breaks or rest periods as required by the Labor Code.

3  As established by *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal. 5th 903

4  and reinforced by California Assembly Bill 5, workers like Ms. Carter and the putative class

5  members are presumptively hired as employees for purposes of claims for wages and benefits.

6  Existing law requires a three-part test, commonly known as the "ABC" test, for Defendants to

7  meet their burden to establish that workers like Ms. Carter and the putative class members are

8  independent contractors rather than employees.

9  Defendants answered the lawsuit on June 30, 2020, generally denying the allegations and

10  asserting 59 separate affirmative defenses. Over the course of nearly two years since that Answer

11  was filed, Defendants have refused to produce any documents in discovery. (*See* Hogg Decl. at ¶

12  1) Even where Defendants indicated they would produce documents, no such production has ever

13  been made. (*Id.*) To date, Defendants have not produced a shred of evidence in support of their

14  burden to show that Ms. Carter and/or the potential class members are "contractors" rather than

15  employees.

16  **B.  Settlement negotiation practice and Defendants' illicit solicitations.**

17  In lieu of unnecessary motion practice, and with an eye towards resolving this matter,

18  Plaintiff's Counsel (with Ms. Carter's knowledge, consent, and authority) attempted to negotiate

19  settlement with Defendants at various times throughout this litigation. Those attempts culminated

20  On December 30, 2021, when Plaintiff's Counsel William Hogg sent a settlement offer to Defense

21  Counsel indicating that Ms. Carter was willing to accept an amount to resolve her individual

22  claims, including a separate amount in attorneys' fees and costs that far exceeded $15,000 by

23  itself (the "Dec. 30th Offer"). (*See* Hogg Decl., Exhibit 1.)

24  A mere five days later, Ms. Carter informed Mr. Hogg that Red Tie had sent one of its

25  managers and/or agents to speak with Ms. Carter *ex parte* about her lawsuit, ostensibly in an

26  attempt to broker a settlement without Plaintiff's Counsel's knowledge or consent despite the

27  ongoing negotiations. (*Id.* at ¶ 4.) Upon hearing this startling development, and wanting to

28  confirm that such an attempt to solicit Ms. Carter to settle her claims was in direct response to the

-3-

1 Dec. 30th Offer, Plaintiff's Counsel followed up with Counsel for Defendants, Dennis Gutierrez.
2 (*Id.* at ¶ 5) Mr. Gutierrez responded and confirmed that he had communicated the Dec. 30th Offer
3 to his clients but had not received an official "response" from Defendants. (*Id.*)

4     Several weeks passed, still with no apparent response from Defendants to the Dec. 30th
5 Offer despite multiple attempts by Plaintiff's Counsel to follow up. (*Id.*) Throughout the month
6 of January, Ms. Carter became increasingly difficult to contact by phone, email, and regular mail.
7 (*Id.* at ¶ 6) At the time, Plaintiff's Counsel had no indication or reason to believe that such
8 difficulties were due to additional improper *ex parte* solicitations initiated by Defendants and/or
9 Defense Counsel—Plaintiff's Counsel simply believed such difficulties were due to phone
10 connection problems and/or Ms. Carter's generally busy schedule. (*Id.*)

11     On February 4, 2022, Plaintiff's Counsel received an unexpected message from a third
12 party, attorney Samuel Nordean. (*Id.* at ¶ 7 n. 2) Mr. Nordean informed Plaintiff's Counsel that
13 Ms. Carter had attempted to settle with Red Tie without Plaintiff's Counsel's knowledge or input
14 and had reached out to Mr. Nordean in an effort to finalize or effectuate the settlement. (*Id.*) Mr.
15 Nordean informed Plaintiff's Counsel that he was not interested in representing Ms. Carter, but
16 nonetheless confirmed that Ms. Carter had signed some papers and had received $15,000 as a
17 "settlement." (*Id.*)

18     Upon learning about this shocking development, Plaintiff's Counsel immediately contacted
19 Defense Counsel that same day by sending a letter, which demanded copies of any purported
20 written agreements and confirmation of any funds transferred. (*Id.*, Exhibit 4.) Defense Counsel
21 did not immediately respond. (*Id.* at ¶ 7) Plaintiff's Counsel followed up again on February 8,
22 2022 by phone and email, again reiterating the demand for copies of these documents. (*Id.* at ¶ 9)
23 Defense Counsel did not return Plaintiff's Counsel's phone call, but instead sent an email which
24 attached purported copies of the "agreement," an employment application, and a copy of a
25 cashier's check that was made out to Ms. Carter. (*Id.*, Exhibit 2.)

26     Defense Counsel Calvin House insisted that Red Tie did not do this at "his" direction, that
27 "he" had nothing to do with it, and that "he" did not provide any instructions or draft any
28 documents for Red Tie. (*Id.* at ¶ 10, Exhibit 3.) Notably, Mr. House did not attempt to claim that

no one else with his law firm, Gutierrez, Preciado & House, had the same level of purported non-involvement with Red Tie's attempt to solicit Ms. Carter to settle her FLSA claims. (*Id.*) It should be noted that since April 2021, Mr. House and Mr. Gutierrez have also represented Defendants in a separate lawsuit that is currently pending in the Central District of California, *Shafer v. Red Tie, LLC, et al.*, Case No. 2:20-cv-05726-ODW-PVC, in which the plaintiffs assert minimum wage violations under the FLSA based on being misclassified as independent contractors. The fact that the supposed settlement with Ms. Carter attempts to settle FLSA claims, and specifically mentions the other FLSA lawsuit currently pending against Defendants, evinces input and involvement of Defense Counsel in drafting or assisting in drafting the written instrument that Defendants solicited Ms. Carter to sign. (*See* Hogg Decl. at ¶ 11)

The purported "agreement" was apparently signed by Ms. Carter on January 6, 2022 (*id.*, Exhibit 2), a mere two days after Red Tie attempted to solicit Ms. Carter the first time. Because Red Tie used a cashier's check dated the same day, it is clear that Red Tie and/or Defense Counsel planned this solicitation ahead of time since it had the fully-drafted "agreement" prepared before Ms. Carter arrived, procured a "cash in hand" instrument the same day that Ms. Carter purportedly signed the agreement. Following that attempted January 6th transaction, Defendants and Defense Counsel kept this fact hidden from Plaintiff's Counsel for a full month, despite exchanging further communications and telling Plaintiff's Counsel that Defendants had not yet responded to the Dec. 30th Offer. (*Id.*). In reality, Defendants had "responded" to the Dec. 30th Offer a week after they received it by attempting to improperly solicit a litigant who they knew was represented by counsel. In short, Mr. Gutierrez misled Plaintiff's Counsel in furtherance of Defendants' surreptitious efforts to "pick off" Ms. Carter as the named plaintiff in her putative class action lawsuit.

### C.    Terms of the purported "settlement."

"'The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible.'" (*Zalkind v. Ceradyne, Inc.* (2011) 194 Cal. App. 4th 1010, 1022.) It is a common law rule of contact interpretation that ambiguity is construed

1   against the drafting party. (*See Patterson v. Superior Court* (2021) 70 Cal. App. 5th 473, 481-82,

2   citing *Mastrubuono v. Shearson Lehman Hutton* (1995) 514 U.S. 52, 63; Civ. Code § 1654; *24*

3   *Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal. App. 4th 1199, 1214-15.) Here, there can be

4   no question that Defendants and/or Defense Counsel drafted this supposed agreement.

5        The purported "agreement" that Defendants and/or Defense Counsel solicited Ms. Carter

6   to sign without Plaintiff's Counsel's knowledge attempts to solely resolve Ms. Carter's potential

7   claims under the FLSA for minimum wages, liquidated damages, "statutory penalties," and

8   attorneys' fees and costs. (*See* Hogg Decl., Exhibit 2.) Indeed, the first section of the "Recitals"

9   indicate that Ms. Carter filed suit on September 12, 2019 in the Superior Court of California in

10   Los Angeles, alleging "a Collective Action under the Fair Labor Standards Act," and violations

11   of the Labor Code provisions for minimum wage violations, meal period violations, rest period

12   violations, and violations of the California Business and Professions Code. (*Id.*) In reality, Ms.

13   Carter did not asserted FLSA claims or a collective action as part of this case. (*See* Complaint.)

14   This was the first of many misrepresentations made to Ms. Carter in this supposed "agreement."

15        In exchange for a mere $15,000.00, Ms. Carter purportedly agreed that such amount "is at

16   least, if not more than, all **money to which she is entitled to receive under the Fair Labor**

17   **Standards Act**" (*see* Hogg Decl., Exhibit 2 [emphasis added]), and also includes "[a]ll minimum

18   wages due but unpaid to Carter; [] Statutory penalties; [] Attorney's Fees and costs; and [] Any

19   other relief which Carter may be entitled **under the Fair Labor Standards Act**." (*Id.* [emphasis

20   added].) In other words, the purported agreement concedes that Ms. Carter is an employee under

21   the FLSA, is due minimum wage compensation, and seeks only to resolve Ms. Carter's FLSA

22   claims, as well as penalties and attorneys' fees and costs that Ms. Carter might be able to recover

23   ***under the FLSA***. There is no language in this purported agreement requiring or requesting Ms.

24   Carter to release or resolve her claims brought under the California Labor Code or Business and

25   Professions Code, including attorneys' fees and costs that may be owed under Labor Code § 1194

26   or other California law.

27        Under the "Acknowledgement" section, Ms. Carter "acknowledges payment in full by Red

28   Tie of any and all claims or obligations **arising under the Fair Labor Standards Act**, and the

-6-

1  Action is therefore moot." (*Id.* [emphasis added].) Again, Ms. Carter never asserted FLSA claims

2  in "the Action" (*see* Complaint) and it would therefore not moot her Labor Code claims. That is

3  another material misrepresentation made by Defendants to Ms. Carter. Under the third section,

4  "[t]he parties confirm that no consideration or release is being given to Red Tie or its managers

5  by Carter other than agreement to **dismiss the Action on the ground of mootness due to Carter**

6  **receiving all compensation and other relief, including liquidated damages and attorneys fees**

7  **and costs to which she is entitled under the Fair Labor Standards Act.**" (*Id.* [emphasis

8  added].) The purported agreement "will not preclude or dissuade other potential plaintiffs from

9  bringing claims." (*Id.*) In other words, while the purported settlement seeks a release only of Ms.

10  Carter's FLSA claims, it attempts to use such a limited release to force Ms. Carter to dismiss all

11  of her Labor Code and Business and Professions Code claims as part of this lawsuit on the ground

12  of "mootness." That is another material misrepresentation made by Defendants to Ms. Carter—

13  even if she could have "released" or waived her FLSA rights by way of contract without court

14  approval or without oversight from the Department of Labor (she cannot), that limited release

15  would not preclude her from pursuing her rights under the Labor Code.

16  Accordingly, as is made clear from the express language of the purported agreement,

17  Defendants only sought to resolve claims Ms. Carter may have had under the FLSA—nowhere

18  in the purported agreement does the supposed settlement seek to resolve or waive Ms. Carter's or

19  her attorneys' ability to recover damages, penalties, or reasonable attorneys' fees and costs under

20  the Labor Code. Because Ms. Carter never asserted FLSA claims against Defendants as part of

21  this Action, or any other action, there is no FLSA claim or lawsuit to dismiss for "mootness." The

22  purported "settlement" is therefore deficient to resolve or release the Labor Code claims and/or

23  Business and Professions Code claims that Ms. Carter has asserted here. Any attempt by

24  Defendants to dismiss or "moot" the present Action based on a deficient settlement should be

25  rejected outright, and the Court should invalidate such provisions.

26  **III.   THE COURT SHOULD ORDER DEFENDANTS TO SHOW CAUSE WHY THEY
        SHOULD NOT BE HELD IN CONTEMPT FOR IMPROPERLY SOLICITING A**
27      **REPRESENTED PARTY**

28

1   Surreptitious *ex parte* settlement solicitations aside, which may be grounds for attorney

2   misconduct proceedings at a later time if warranted, it is appropriate for the Court to issue an order

3   for Defendants and/or Defense Counsel to show cause why they should not be held in contempt

4   for attempting to undermine the Court's litigation management authority. This is especially so

5   because this case is not simply an individual action, but is a putative class action.

6   California Code of Civil Procedure 128 enshrines the principle that California courts shall

7   have the power to, among other things, provide for the orderly conduct of proceedings before the

8   court and to control the conduct of persons connected with the judicial proceeding before it. (*See*

9   CCP § 128.) In addition to CCP § 128, courts have recognized that:

10        [A]ll courts possess inherent supervisory or administrative powers
           to enable them to carry out their duties, albeit subject to certain
11         limitations. (*Bauguess v. Paine* (1978) 22 Cal.3d 626, 635–636, 639
           [150 Cal. Rptr. 461, 586 P.2d 942], superseded by statute on other
12         grounds as stated in *Olmstead v. Arthur J. Gallagher & Co.* (2004)
           32 Cal.4th 804, 809 [11 Cal. Rptr. 3d 298, 86 P.3d 354].) In a class
13         action, a trial court has the authority and the duty "to protect the
           rights of all parties, and to prevent abuses which might undermine
14         the proper administration of justice." (*Howard Gunty Profit Sharing
           Plan v. Superior Court* (2001) 88 Cal.App.4th 572, 581 [105 Cal.
15         Rptr. 2d 896].) Where a trial court identifies a potential for abuse,
           the court "'has both the duty and the broad authority to exercise
16         control over a class action and to enter appropriate orders governing
           the conduct of counsel'" and parties. (*Id*. at p. 579.)

17   (*Hernandez v. Vitamin Shoppe Industries Inc.* (2009) 174 Cal. App. 4th 1441, 1454; *see also S.F.*

18   *Unif. Sch. Dist. ex rel. Contreras v. First Student, Inc.* (2013) 213 Cal. App. 4th 1212, 1227 [court

19   can invoke "inherent power to control the proceedings before it" under § 128].)

20   Defendants' and/or Defense Counsel's conduct in soliciting Ms. Carter *ex parte* is

21   egregious, offensive to the adverse litigation process, and undermines the Court's authority to

22   supervise and oversee this case, both as to Ms. Carter's individual claims and the putative class

23   action allegations.

24   To that end, *Hernandez v. Vitamin Shoppe Industries Inc.* is instructive. In that case, when

25   the lead plaintiff in a class action was about to settle, her attorney wrote to other class members to

26   urge them to opt out and to retain him to represent them in a separate class action asserting the

27   same claims against the same defendant. (*Id*. at pp. 1444-1447.) The trial court ordered the attorney

28

-8-

1  not to communicate with such class members and ordered monetary sanctions against the
2  offending counsel. (*Id.* at pp. 1448-1449.) The appellate court sustained the order limiting
3  communications, citing to the court's inherent authority to supervise and administer cases before
4  them, but reversed the part of the order imposing sanctions on the grounds that the version of
5  section 128 in place at the time did not provide the court with the power to impose sanctions.[3] (*Id.*
6  at p. 1452.)

7      Here, Defendants' conduct was far worse than the violating party's conduct in *Hernandez*.
8  Instead of a plaintiff's attorney attempting to solicit otherwise unrepresented class members on
9  the eve of settlement, here, Defendant intentionally sent agents on multiple occasions to solicit
10 the *Named Plaintiff* in a putative class action, knowing she was represented by counsel at the
11 time, in an attempt to induce her into "settling" her non-pleaded FLSA claims. Defendant's aim
12 was to utilize such a "release" as a basis to dismiss Ms. Carter's Labor Code and Business and
13 Professions Code claims, which were not settled or released by the purported agreement. Even
14 worse than contacting unrepresented class members, Defendants did this *knowing that Ms. Carter*
15 *was represented by counsel when it made such improper solicitations*. Such conduct clearly
16 undermines the Court's inherent authority to manage the case before it.

17     Accordingly, Plaintiff requests the Court issue an order for Defendants to show cause why
18 they should not be held in contempt of Court for knowingly, willfully, and purposefully
19 attempting to undermine the Court's inherent power to supervise the case before it and to prevent
20 misconduct of Defendants and/or Defense Counsel. Plaintiff does not seek sanctions pursuant to
21 CCP § 128 at this time, but reserves such a request for a later time.

22 **IV.    THE COURT SHOULD ORDER THAT CORRECTIVE NOTICE IS APPROPRIATE TO BE SENT TO THE PUTATIVE CLASS MEMBERS TO ADDRESS DEFENDANTS' MISLEADING AND COERCIVE BEHAVIOR EXHIBITED TOWARD MS. CARTER.**
23

24     Even assuming for the sake of argument that at the time this *ex parte* communication
25 occurred, Ms. Carter were not the Named Plaintiff and were not represented by counsel (she was),
26

27 _____
[3]  The current version of CCP § 128.5 would provide such a basis, so long as the party seeking
28 sanctions complies with the safe-harbor provisions of that rule. Plaintiff reserves all rights to seek
sanctions under CCP § 128.5 or other relevant authority at a later time, if appropriate.

1   but instead was simply an unrepresented potential class member prior to certification, Defendants'

2   conduct would still be improper and would be grounds for an order limiting Defendants' ability

3   to communicate with potential class members about the case, and for corrective notice to be sent

4   to the potential class members. Defendants' conduct here in soliciting the Named Plaintiff Ms.

5   Carter to settle her FLSA claims by using an already-drafted long form settlement agreement

6   indicates that Defendants have attempted, or will attempt, to do the same with other putative class

7   members.

8          "Defendants and their counsel generally may communicate with potential class members

9   in the ordinary course of business, including discussing settlement before certification," but they

10  "may not give 'false, misleading, or intimidating information, [or] conceal material information.'"

11  (Manual for Complex Lit. § 21.12; *see also Cheverez v. Plains All American Pipeline, LP* (C.D.

12  Cal. Mar. 3, 2016) No. CV15-4113 PSG (JEMx), 2016 WL 861107, at *2 ["a court may take

13  action to cure the mis-communication and to prevent similar problems in the future where

14  potential class members have received inaccurate, confusing or misleading communications"];

15  *County of Santa Clara v. Astra USA, Inc.* (N.D. Cal. July 8, 2010) No. C 05-03740 WHA, 2010

16  WL 2724512, at *3 ["Settlements . . . cannot come at the expense of the class action mechanism

17  itself to the detriment of putative class members."].)

18         Courts have therefore frequently ordered corrective action where defendants have obtained

19  releases through misleading *ex parte* communications with putative class members. (*See, e.g.,*

20  *Cheverez*, 2016 WL 861107, at *6 [invalidating releases and ordering corrective action]; *Romero*

21  *v. May Trucking Co.* (C.D. Cal. Feb. 21, 2018) No. EDCV 17-2406 JGB, 2018 WL 5905604, at

22  *3-4 [same]; *Marino v. CACafe, Inc.* (N.D. Cal. Apr. 28, 2017) No. 16-CV-6291 YGR, 2017 WL

23  1540717, at *3 [same]; *see also, e.g., Slavkov v. Fast Water Heater Partners I, LP* (N.D. Cal.

24  Nov. 2, 2015) No. 14-CV-04324-JST, 2015 WL 6674575, at *2 ["Courts in this district have

25  limited communications, as well as invalidated agreements that resulted from those

26  communications, when they omitted critical information or were otherwise misleading or

27  coercive."].)

28

1    Indeed, courts have made clear that defendants' failure to provide adequate information is

2    alone enough to invalidate settlement agreements with the putative class. (*See, e.g., Cheverez*,

3    2016 WL 861107, at *4 ["Courts routinely hold that releases are misleading where they do not

4    permit a putative class member to fully evaluate his likelihood of recovering through the class

5    action."]; *Astra*, 2010 WL 2724512, at *3-4 [defendants must "provide enough information so

6    that recipients would not be misled about the strength or extent of the claims"]; *Marino*, 2017 WL

7    1540717, at *2 [defendants failed to provide "information that might have permitted [the putative

8    class members] to make an informed decision about the waiver of their rights"].)

9    Importantly here, courts have also found defendants' communications improper due to

10   other coercive circumstances and misleading information, such as soliciting releases through

11   mandatory one-on-one meetings, suggesting that only attorneys will benefit from the case, or

12   making statements that could be perceived as restricting contact with plaintiff's counsel. (*See,*

13   *e.g., Cheverez*, 2016 WL 861107, at *6; *Guifu Li v. A Perfect Day Franchise, Inc.* (N.D. Cal.

14   2010) 270 F.R.D. 509, 518; *Slavkov*, 2015 WL 6674575, at *2-4.)

15   Here, Defendants' and/or Defense Counsel's conduct was far worse because Ms. Carter

16   was not simply some unrepresented potential class member: she was the Named Plaintiff and was

17   represented by counsel. As such, Defendants' misleading communications to Ms. Carter have not

18   only lead to Ms. Carter signing an ostensible "settlement" of her FLSA claims which Defendants

19   will attempt to use to dismiss her Labor Code claims, but have also likely improperly invaded the

20   representation agreement Ms. Carter signed with Plaintiffs' Counsel. In any event, the same

21   reasoning these courts apply in requiring corrective action for class members applies with equal

22   force to Ms. Carter (*i.e.*, Ms. Carter should be afforded the same protections as those routinely

23   afforded to putative class members). Defendants sent their agents to solicit Ms. Carter. They made

24   materially misleading statements that are evidenced by the documents Ms. Carter purportedly

25   signed. By attempting to carve out attorneys' fees due under the FLSA, Defendants impliedly told

26   Ms. Carter that only her attorneys would benefit from the case. Based on the difficulty Plaintiff's

27   Counsel has had with getting in touch with Ms. Carter since this purported agreement was signed,

28   it is also clear that Defendants' instructed Ms. Carter not to speak with her attorneys.

-11-

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE
*Carter v. Red Tie, Inc. et al.*, Case No. 19STCV32364

1    Notably, Defendants' purported settlement agreement with Ms. Carter was directly

2 misleading, in that it attempts to settle and resolve her FLSA claims (which she did not assert in

3 this case), did not seek to settle or release any of Ms. Carter's claims under the Labor Code, and

4 on that limited basis attempts to force Ms. Carter to dismiss her Labor Code claims in this action

5 on "mootness" grounds. As Defendants and/or Defense Counsel failed to disclose to Ms. Carter,

6 parties cannot simply waive FLSA claims—waiver of FLSA claims requires either Court

7 supervision or oversight from the U.S. Department of Labor. (*See In re City of Redondo Beach*

8 *FLSA Litig.* (C.D. Cal. Mar. 16, 2021) No. 2:17-cv-090970ODW (SKx), 2021 WL 1010631, at

9 *2 ["an employee's claims under the FLSA may be waived or settled only with supervision of the

10 Secretary . . . or approval of a district court."] citing *Selk v. Pioneers Mem'l Healthcare Dist.*

11 (S.D. Cal. 2016) 159 F. Supp. 3d 1164, 1172.) Neither has occurred here.

12    Accordingly, Defendants' and/or Defense Counsel's *ex parte* communications, in addition

13 to undermining the Court's authority to control matters on its docket and potentially violating the

14 rules of professional conduct, materially misled Ms. Carter into thinking she could settle her

15 FLSA claims without court approval. That misleading communication was further compounded

16 by Defendants' and/or Defense Counsel's material omission that Ms. Carter was not actually

17 settling or releasing her Labor Code claims, but that the attempted FLSA settlement would serve

18 as grounds to dismiss those claims in this lawsuit on "mootness" grounds. From start to finish,

19 Defendants' and/or Defense Counsel's attempt to "buy off" Ms. Carter was rife with intentionally

20 misleading and prejudicial communications. Given the cookie-cutter nature of the purported

21 settlement agreement, it is probable that Defendants and/or Defense Counsel have tried to do the

22 same with unidentified potential class members or will try to do same with those workers in the

23 future.

24    Because the FLSA claims are not before this Court and because Defendants have not

25 sought Court-approval of that attempted settlement, Plaintiff does not seek a ruling to invalidate

26 that portion of the purported release. However, to the extent Defendants seek dismissal of Ms.

27 Carter's underlying Labor Code claims based on that purported release and/or "mootness,"

28 Plaintiff's Counsel requests the Court hold such a provision to be invalid and unenforceable. Ms.

-12-

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE
*Carter v. Red Tie, Inc. et al.*, Case No. 19STCV32364

1   Carter should not have to return the $15,000 that was paid to her, since that amount can simply

2   offset any later recovery. (*See, e.g., Cheverez*, 2016 WL 861107, at *6; *see also Astra*, 2010 WL

3   27724512, at *6 ["Any checks cashed will be deducted from any recovery . . . ."].)

4        And given Defendants' grossly misleading conduct here, and the high likelihood that

5   Defendants have likewise misleadingly communicated with putative class members, Plaintiff's

6   Counsel requests the Court order Defendants and/or Defense Counsel to cease all

7   communications with the workers about the lawsuit and/or about settling their wage-and-hour

8   claims. In furtherance of such an order, Plaintiff's Counsel also requests issuance of a corrective

9   notice to Ms. Carter and the putative class members, in the form and substance attached hereto as

10  Exhibit A.

11       Courts routinely order such notice under less-egregious facts, to adequately inform the

12  putative class about the case, corrective action taken by the court, and laws prohibiting retaliation.

13  (*See, e.g., Marino*, 2017 WL 1540717, at *4; *Cheverez*, 2016 WL 861107, at *6; *Guifu Li*, 270

14  F.R.D. at 518-19.) Given Defendants' improper conduct to date, the Court should order

15  Defendants to provide a complete list of contact information for the putative class to Plaintiff's

16  Counsel, so that Plaintiff's Counsel can ensure the notice is mailed and received by the potential

17  class members. The Court should also order Defendants to reimburse Plaintiff's Counsel for the

18  costs of printing and mailing the corrective notice. (*See, e.g., Marino*, 2017 WL 1540717, at *3.)

19  **V.    CONCLUSION**

20       Defendants' and/or Defense Counsel's *ex parte* communications and solicitations of Ms.

21  Carter were improper, abusive of the adversarial system, and materially misleading. Defendants

22  and/or Defense Counsel provided blatantly false information to Ms. Carter, omitted material

23  information, attempted to "settle" a claim for minimum wages under the FLSA that required court

24  approval, are attempting to force Ms. Carter to dismiss her Labor Code claims based on that

25  attempted "settlement" of her FLSA claims, and did all of this by improperly sending agents to

26  solicit Ms. Carter without her counsel's knowledge. Defendants' and/or Defense Counsel's

27  conduct undermines the basic adversarial litigation process and subverts the Court's authority to

28  manage the litigation and oversee the conduct of the parties before it. To the extent Defendants

1  attempt to force Plaintiff to dismiss her Labor Code claims on "mootness" grounds, Plaintiff's

2  Counsel requests the Court invalidate such a provision of the purported agreement.

3      Accordingly, the Court should issue an order for Defendants and/or Defense Counsel to

4  show cause why they should not be held in contempt of Court for such improper solicitation. The

5  Court should also order that Defendants and/or Defense Counsel are not permitted to speak with

6  Ms. Carter or the potential class members about the lawsuit and/or about settling claims. The

7  Court should also order Defendants to provide Plaintiff's Counsel with the names and contact

8  information of the putative class members and approve/adopt Plaintiff's Counsel's proposed

9  corrective action notice to be sent to the putative class members, to prevent harm and prejudice

10  resulting from similarly-misleading communications or settlement attempts with those workers.

11      Plaintiff further requests all such and other relief to which she may be entitled in law or

12  equity.

13

14

15  Dated:  March 29, 2022                Respectfully submitted,

16  HODGES & FOTY, LLP

17

18

19  William M. Hogg

20  *Attorney for Plaintiff and the Class Members*

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE
*Carter v. Red Tie, Inc. et al.* Case No. 19STCV32364