John P. Kristensen (SBN 224132)
Jesenia A. Martinez (SBN 316969)
**CARPENTER & ZUCKERMAN**
8827 W. Olympic Boulevard
Beverly Hills, California 90211
Telephone: 310-273-1230
Facsimile: 310-858-1063
*kristensen@cz.law*
*jmartinez@cz.law*

*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SAMANTHA SHAFER, an individual; IDA HURLEY, an individual; AEJA HURT, an individual; and ALEXIS JACKSON, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> RED TIE, LLC DBA RED TIE GENTLEMEN'S CLUB; MIKE MUDARIS, an individual; INGRID GOULDING, an individual; and BOB SIMONI, an individual, <br><br> Defendants. | ) Case No.: 2:20-cv-5726-ODW-PVC <br> ) <br> ) **COLLECTIVE ACTION** <br> ) <br> ) **Assigned to Hon. Otis D. Wright II** <br> ) <br> ) **PLAINTIFFS' NOTICE OF** <br> ) **UNOPPOSED MOTION AND** <br> ) **UNOPPOSED MOTION FOR** <br> ) **APPROVAL OF FLSA** <br> ) **SETTLEMENT** <br> ) <br> ) **Hearing** <br> ) **Date:** September 12, 2022 <br> ) **Time:** 1:30 p.m. <br> ) **Ctrm:** 5D <br> ) |

**TO THIS COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, September 12, 2022 at 1:30 p.m. in Courtroom 5D of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012 that plaintiffs Ida Hurley, Briggitte Donis, Elianna Solis, Marissa McElhaney, Jessica Goodman, Stephanie Munns, Alyxandra Mammensohn, Kema Patterson, Kayla White, Maribel Real, Alyzza Valtierra, Daisy Resendez, LaShai Hunt, Anna Mia Caldwell Bresin, Erika Hice, and Alizae Montiel (collectively, "Plaintiffs"), by and through undersigned counsel, hereby request approval of the settlement agreements (the "Agreements") reached between Plaintiffs and defendants Red Tie, LLC dba Red Tie Gentlemen's Club, Mike Mudaris, Ingrid Goulding, and Bob Simoni (collectively, "Defendants") (Plaintiffs and Defendants will be referred to collectively as the "Parties").

The Agreements are attached as exhibits to the Declaration of John P. Kristensen filed concurrently with this Motion. *See* Declaration of John P. Kristensen ¶ 27, Exhibits ("Exs.") 1-16. Plaintiffs submit that the Court should approve the Settlement for the reasons described in the Memorandum of Points and Authorities. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place prior to filing this motion.

Dated: August 4, 2022

Respectfully submitted,

**CARPENTER & ZUCKERMAN**

*/s/ John P. Kristensen*

John P. Kristensen
Jesenia A. Martinez

**Attorneys for Plaintiffs**

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................... 1

    **I.**    INTRODUCTION AND BRIEF PROCEDURAL HISTORY ....................... 1

    **II.**    FACTUAL BACKGROUND ................................................................ 2

    **III.**    LEGAL GROUNDS FOR PLAINTIFFS' CLAIMS ............................... 3

    **IV.**    THE SETTLEMENT AGREEMENTS ................................................ 3

    **V.**    STANDARD FOR APPROVAL OF FLSA SETTLEMENTS ................ 5

    **VI.**    APPROVAL OF THE FLSA SETTLEMENTS ................................. 6

        **A.**    *Bona Fide Dispute* ....................................................... 6

        **B.**    *Fair and Reasonable Resolution* ............................. 8

            **1.**    Plaintiffs' Possible Range of Recovery ..................... 8

            **2.**    The Stage of Proceedings and Amount of Discovery Completed .................................................... 12

            **3.**    Seriousness of Litigation Risks Faced by the Parties ....................................................................... 13

            **4.**    Scope of Any Release Provision in the Agreements .................................................................. 13

            **5.**    Experience and Views of Counsel and Opinion of Participating Plaintiffs ......................................... 14

            **6.**    Possibility of Fraud or Collusion ............................. 14

    **VII.**    THE ATTORNEYS' FEES AND COSTS REQUEST IS REASONABLE ............................................................................. 15

        **A.**    *FLSA Collective Action Settlements Allow for a Greater Recovery of Attorneys' Fees Than Rule 23 Class Action Settlements* ......................................... 15

        **B.**    *Plaintiffs' Attorneys' Fees Totaling 45% of the Settlement Is a Reduction of the Lodestar and Would Therefore Be a Reasonable Award* ...................... 17

    **VIII.**    CONCLUSION ............................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Cases**

4

*Ambrosino v. Home Depot. U.S.A., Inc.*,
5
     No. 11-CV-1319-MDD, 2014 WL 1671489 (S.D. Cal. Apr. 28, 2014)....13

6

*Bonnette v. California Health & Welfare*,
7
     704 F.2d 1465 (9th Cir.1983).....................................................................17

8

*Byrne v. Santa Barbara Hospitality Services, Inc.*,
9
     C.A. No. 17-00527, Dkt. 178 (C.D. Cal. Dec. 14, 2018)..........................20

10

*Cheeks v. Freeport Pancake House, Inc.*,
11
     796 F.3d 199 (2d Cir. 2015).....................................................................11

12

*Class Plaintiffs v. City of Seattle*,
13
     955 F.2d 1268 (9th Cir. 1992)...................................................................14

14

*Cotton v. Hinton*,
15
     559 F.2d 1326 (5th Cir. 1977)......................................................................6

16

*Doe 1-2 v. Deja Vu Servs., Inc.*,
17
     No. 2:16-cv-10877, 2017 WL 2629101 (E.D. Mich. June 19, 2017)........19

18

*Earls v. Forga Contracting, Inc.*,
19
     No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921
20
     (W.D.N.C. June 9, 2020)...........................................................................16

21

*Fegley v. Higgins*,
22
     19 F.3d 1126 (6th Cir. 1994).....................................................................17

23

*Fisher v. SD Prot. Inc.*,
24
     948 F.3d 593 (2d Cir. 2020).....................................................................16

25

*Garcia v. Jambox, Inc.*,
26
     No. 14-CV-3504-MHD, 2015 WL 2359502 (S.D.N.Y. Apr. 27, 2015)....13

27

*Gary v. Carbon Cycle Arizona LLC*,
28
     398 F. Supp. 3d 468 (D. Ariz. 2019).........................................................18

*Gay Officers Action League v. Puerto Rico*,
   247 F.3d 288 (1st Cir. 2001) ....................................................................18

*Glass v. UBS Financial Services, Inc.*,
   No. 06-CV-4068-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)........8

*Gonzalez v. Fallanghina, LLC*,
   No. 16-cv-01832-MEJ, 2017 WL 1374582 (N.D. Cal. Apr. 17, 2017).......6

*Greer v. Pac. Gas & Elec. Co.*,
   No. 15-CV-1066-EPG, 2018 WL 2059802 (E.D. Cal. May 3, 2018) .........8

*Hart v. RCI Hosp. Holdings, Inc.*,
   No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ...19

*Hensley v. Eckerhart*,
   461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) .......................18

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ....................................................................15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ..........................................................................6

*In re TJX Companies Retail Sec. Breach Litig.*,
   584 F.Supp.2d 395, 408 (D.Mass. 2008) ..................................................16

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F.Supp.2d 249 (D.N.H. 2007) ............................................................16

*In re Visa Check/Mastermoney Antitrust Litig.*,
   297 F.Supp.2d 503 (E.D.N.Y. 2003).........................................................16

*Jennings v. Open Door Mktg., LLC*,
   No. 15-CV-4080-KAW, 2018 WL 4773057
   (N.D. Cal. Oct. 3, 2018) ............................................................6, 8, 12, 13

*Johnson v. MetLife, Inc.*,
   No. SACV 13-128-JLS, 2014 WL 12773568 (C.D. Cal. Nov. 6, 2014) .....8

*Kazanjian v. MSM Enterprises, Inc.*,
   No. CIV. 93-227-P-C, 1995 WL 140153 (D.Me. Mar. 15, 1995) ............16

*King v. My Online Neighborhood*,
No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575
(M.D. Fla. Mar. 7, 2007) .............................................................................6

*Larsen v. Trader Joe's Co.*,
No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. Jul. 11, 2014) ....14

*Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*,
18 F.3d 1527 (11th Cir. 1994)......................................................................6

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)....................................................................12

*Lucio–Cantu v. Vela*,
239 Fed. App'x 866 (5th Cir.2007)............................................................17

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982)............................................................5, 6, 7

*Macklin v. Biscayne Holding Corp et al*,
No. 1:19-cv-00561-WES-PAS (D.R.I. 2019) .............................................18

*Madrid v. teleNetwork Partners, LTD.*,
No. 5:17-cv-04519-BLF, 2019 WL 3302812 (N.D. Cal. July 23, 2019).....7

*Marrotta v. Suffolk Cty.*,
726 F.Supp.2d 1 (D.Mass. 2010) ........................................................18, 19

*McKeen-Chaplin v. Franklin Am. Mortg. Co.*,
No. 10-CV-5243-SBA, 2012 WL 6629608 (N.D. Cal. Dec. 19, 2012).....13

*Mills v. Cabral*,
No. CIV.A. 06-10133-RGS, 2010 WL 2553889
(D.Mass. June 18, 2010).............................................................................18

*Ortega v. The Spearmint Rhino Companies Worldwide Inc., et al.*,
No. 5:17-cv-00206-JGB-KK (C.D. Cal. July 5, 2021) ..............................19

*Otey v. CrowdFlower, Inc.*,
No. 12-cv-05524, 2014 WL 1477630 (N.D. Cal. Apr. 15, 2014)................5

*Otey v. CrowdFlower, Inc.*,
 No. 12-cv-05524, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015) ...............5

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
 442 F.3d 741 (9th Cir. 2006)........................................................................13

*Rodriguez v. Nationwide Mutual Ins.Co., et al.*,
 No. 8:16-cv-02217-JLS-DFM, 2017 WL 7803796
 (C.D. Cal. Nov. 16, 2017) .............................................................................5

*Roe v. Jose Torres L.D. Latin Club Bar, Inc.*,
 No. 19-cv-06088-LB, 2020 WL 2494569 (N.D. Cal. May 14, 2020) .......19

*Saleh v. Valbin Corp.*,
 No. 17-CV-0593-LHK, 2018 WL 6002320 (N.D. Cal. Nov. 15, 2018)......7

*SKF USA Inc. v. Bjerkness*,
 Nos. 08 C 4709, 09 C 2232, 2011 WL 4501395 (N.D. Ill. 2011)..............17

*Slezak v. City of Palo Alto*,
 No. 16-CV-03224-LHK, 2017 WL 2688224
 (N.D. Cal. June 22, 2017)................................................................12, 14, 15

*Soler v. G & U, Inc.*,
 658 F.Supp. 1093 (S.D.N.Y. 1987)..............................................................11

*Tallman v. CPS Sec. (USA), Inc.*,
 23 F. Supp. 3d 1249 (D. Nev. 2014) ...........................................................16

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
 471 U.S. 290 (1985) ......................................................................................11

*Trinidad v. Pret a Manger (USA) Ltd.*,
 No. 12-cv-6094 (PAE), 2014 WL 4670870 (S.D.N.Y. Sept. 19, 2014) ....12

**Statutes**

29 U.S.C. § 203................................................................................................1, 3

29 U.S.C. § 206....................................................................................................1

29 U.S.C. § 207....................................................................................................1

29 U.S.C. § 216(b) ........................................................................................2, 5, 7, 12

**Rules**

Fed. R. Civ. P. 23 ........................................................................................2, 15, 16, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION AND BRIEF PROCEDURAL HISTORY

Plaintiffs Ida Hurley ("Hurley"), Briggitte Donis ("Donis"), Elianna Solis ("Solis") , Marissa McElhaney ("McElhaney"), Jessica Goodman ("Goodman"), Stephanie Munns ("Munns"), Alyxandra Mammensohn ("Mammensohn"), Kema Patterson ("Patterson"), Kayla White ("White"), Maribel Real ("Real"), Alyzza Valtierra ("Valtierra"), Daisy Resendez ("Resendez"), LaShai Hunt ("Hunt"), Anna Mia Caldwell Bresin ("Caldwell Bresin"), Erika Hice ("Hice"), and Alizae Montiel ("Montiel") (collectively, "Plaintiffs"), worked as exotic dancers at defendants Red Tie, LLC dba Red Tie Gentlemen's Club, Mike Mudaris, Ingrid Goulding, and Bob Simoni's ("collectively, "Defendants") club, Red Tie.

Plaintiff Samantha Shafer[1] filed the Complaint on June 26, 2020 as a collective action. On April 5, 2021, Plaintiffs filed their First Amended Complaint alleging the following causes of action: (1) Failure to Pay Minimum Wage, 29 U.S.C. § 206; (2) Failure to Pay Overtime Wages, 29 U.S.C § 207; (3) Unlawful Taking of Tips, 29 U.S.C. § 203; (4) Illegal Kickbacks, 29 C.F.R § 531.35; and (5) Forced Tip Sharing, 29 C.F.R. § 531.35. *See* Dkt. 48. The causes of action were based on the misclassification of putative collective members as independent contractors.

Prior to the issuance of notice, and afterwards, multiple plaintiffs filed their consents to join. The current plaintiffs filed their consents to join on the following dates: Hurley (August 30, 2020 – Dkt. 19); Donis (May 17, 2021 – Dkt. 62); Solis (June 23, 2021 – Dkt. 72); McElhaney (March 9, 2022 – Dkt. 101); Goodman (March 14, 2022 – Dkt. 102); Munns (March 15, 2022 – Dkt. 103); Mammensohn (March 17, 2022 – Dkt. 104); Patterson (March 25, 2022 –

---

[1]   Plaintiff Samantha Shafer filed a stipulation to be dismissed from this action without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) on August 20, 2021 and the dismissal was entered on August 24, 2021. *See* Dkt. 79 & 83.

Dkt. 107); White (March 22, 2022 – Dkt. 105); Real (March 14, 2022 – Dkt. 102); Valtierra (March 9, 2022 – Dkt. 101); Resendez (April 26, 2022 – Dkt. 116); Hunt (March 22, 2022 – Dkt. 105); Caldwell Bresin (April 25, 2022 – Dkt. 115); Hice (June 23, 2021 – Dkt. 72); and Montiel (March 14, 2022 – Dkt. 102).

As this Court was aware, the Parties actively engaged in litigation, there was a motion for notice pursuant to 29 U.S.C. § 216(b), extensive discovery, and litigation for over two years. After attending a full day Settlement Conference with Hon. Pedro V. Castillo on June 2, 2022, the Parties reached the resolution as described in the Agreements for which they are now seeking approval. *See* Declaration of John P. Kristensen ("Kristensen Decl.") ¶ 25, Exs. 1–16.

Pursuant to the Agreements, Plaintiffs will receive $279,000, with the remaining $283,500 being allocated to Plaintiffs' attorneys' fees ($253,125) and costs ($23,597.02).[2] *See* Kristensen Decl. ¶¶ 27 & 30, Exs. 1–19. This amount reflects a favorable outcome for Plaintiffs, far in excess of what would be expected in a similar Fed. R. Civ. P. 23 class action settlement. Furthermore, the fee request is less than Plaintiffs' counsel's lodestar, virtually identical to other approved Fair Labor Standards Act ("FLSA") settlements, and therefore reasonable.

## II.   FACTUAL BACKGROUND

Plaintiffs were exotic dancers at Red Tie within the three years prior to the filing of the lawsuit or the date they opted in as Plaintiffs. Plaintiffs alleged they were misclassified as independent contractors and were not paid wages.

///

///

---

[2]   At the time of the Settlement Conference, the estimated costs were around $30,375. Since finalizing the settlement, invoices demonstrate that the costs are $23,597.02. The remaining $6,777.98 will be distributed pro rata to each of the Plaintiffs.

### III. LEGAL GROUNDS FOR PLAINTIFFS' CLAIMS

Plaintiffs differentiated the types of FLSA claims. The first two types of claims were for failure to pay minimum wage or overtime.

For the third type of claim, Plaintiffs contended that Defendants required them to "tip-out" to Red Tie's employees. Plaintiffs argued that this forced subsidization of Defendants' club constituted unlawful "kickbacks" in violation of 29 U.S.C. § 203.

Lastly, Plaintiffs also had claims for two types of tipping violations. First, the dancers were "encouraged" to tip the club's employees. The forced tipping, Plaintiffs contend, is also a violation of 29 C.F.R. § 531.35, as it results in the dancers subsidizing the clubs' payment of wages to other employees. The second form of claimed damages for tips was the price of individual private dances to customers which was retained by Defendants rather than being paid to Plaintiffs and "house fees" or "stage fees" that Plaintiffs were required to pay to Defendants to work at Red Tie. Defendants maintain that the dance fees were fees charged by them and belonging to them. Plaintiffs allege these were tips that belonged to them and were improperly taken.

Thus, when Plaintiffs resolved this matter, there were five levels of claimed FLSA damages for each dancer that went into the valuation of the claims. There was also substantial debate between the Parties regarding the number of shifts and dates each dancer worked.

### IV. THE SETTLEMENT AGREEMENTS

Pursuant to the Agreements, Defendants have agreed to pay Plaintiffs a gross settlement amount of $562,500. Plaintiffs will receive $279,000, with the remaining $447,000 being allocated to Plaintiffs' attorneys' fees ($253,125) and costs ($23,597.02).[3] *See* Kristensen Decl. ¶¶ 27 & 30, Exs. 1–19.

---

[3] At the time of the Settlement Conference, the estimated costs were around $30,375. Since finalizing the settlement, invoices demonstrate that the costs are

The allocations to the individual Plaintiffs are as follows:

| PLAINTIFF | SETTLEMENT AMOUNT |
|---|---|
| Caldwell Bresin | $5,000 |
| Donis | $25,000 |
| Goodman | $22,000 |
| Hice | $10,000 |
| Hunt | $5,000 |
| Hurley | $35,000 |
| Mammensohn | $32,000 |
| McElhaney | $5,000 |
| Montiel | $10,000 |
| Munns | $20,000 |
| Patterson | $27,000 |
| Real | $10,000 |
| Resendez | $13,000 |
| Solis | $20,000 |
| Valtierra | $22,000 |
| White | $18,000 |
| **TOTAL** | $279,000 |

*See* Kristensen Decl. ¶ 27, Exs. 1-16.

Plaintiffs' counsel litigated this case extensively. The settlement amounts are significant amounts and take into account the amount of time litigated and the ability to reach resolution and collect, which is relevant in this current unknown economic environment. In exchange for the consideration described above,

---

$23,597.02. The remaining $6,777.98 will be distributed pro rata to each of the Plaintiffs.

1  Plaintiffs have agreed to dismiss their causes of action for alleged violations of

2  the FLSA and any state wage and hour claims stemming from Plaintiffs'

3  employment with the Defendants at issue in the Complaint. *Id.*

4  **V.    STANDARD FOR APPROVAL OF FLSA SETTLEMENTS**

5         "When employees bring a private action for back wages under the [FLSA],

6  and present to the district court a proposed settlement, the district court may enter

7  a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*

8  *Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). Because

9  "[t]he Ninth Circuit has not established the criteria that a district court must

10 consider in determining whether an FLSA settlement warrants approval," district

11 courts in this Circuit widely follow the Eleventh Circuit's *Lynn's Food Stores*

12 standard. *Rodriguez v. Nationwide Mutual Ins.Co., et al.*, No. 8:16-cv-02217-

13 JLS-DFM, 2017 WL 7803796, at *1 (C.D. Cal. Nov. 16, 2017); *see also Otey v.*

14 *CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at *3 & n.5 (N.D. Cal.

15 Apr. 15, 2014) (collecting cases applying *Lynn's Food Stores*).

16        Under *Lynn's Food Stores*, a district court may approve an FLSA

17 settlement only if it reflects "a fair and reasonable resolution of a bona fide

18 dispute over FLSA provisions." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524,

19 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015) (quoting *Lynn's Food Stores*,

20 679 F.2d at 1355). "If a settlement in an employee FLSA suit does reflect a

21 reasonable compromise over issues, such as FLSA coverage or computation of

22 back wages, that are actually in dispute; we allow the district court to approve the

23 settlement in order to promote the policy of encouraging settlement of litigation."

24 *Lynn's Food Stores*, 679 F.2d at 1354. Accordingly, FLSA settlements require

25 the supervision of the Secretary of Labor or the district court. *See Lynn's Food*

26 *Stores*, 679 F.2d at 1352-53. The FLSA also requires that a settlement agreement

27 include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such

28 action shall, in addition to any judgment awarded to the plaintiff or plaintiffs,

*CARPENTER & ZUCKERMAN*

CZ

CZ | CARPENTER & ZUCKERMAN

allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

Under *Lynn's Food Stores*, the following factors are considered: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the Plaintiffs' case and the probability of Plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

When considering these factors, the Court should keep in mind the "'strong presumption' in favor of finding a settlement fair." *King*, 2007 WL 737575, at *3 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (other internal citations omitted)). As discussed below, those factors strongly favor approval of these settlements.

## VI.   APPROVAL OF THE FLSA SETTLEMENTS

### A.   *Bona Fide Dispute*

"A bona fide dispute exists when there are legitimate questions about the existence and extent of the defendant's FLSA liability." *Jennings v. Open Door Mktg., LLC*, No. 15-CV-4080-KAW, 2018 WL 4773057, at *4 (N.D. Cal. Oct. 3, 2018) (quoting *Gonzalez v. Fallanghina, LLC*, No. 16-cv-01832-MEJ, 2017 WL 1374582, at *2 (N.D. Cal. Apr. 17, 2017)). "That is, there must be some doubt whether the plaintiffs will be able to succeed on the merits of their FLSA claims." *Madrid v. teleNetwork Partners, LTD.*, No. 5:17-cv-04519-BLF, 2019

WL 3302812, at *3 (N.D. Cal. July 23, 2019).

The Court should approve the Agreements because they reflect a reasonable compromise of bona fide disputes regarding Defendants' alleged FLSA liability. There was no collusion in reaching the Agreements. The Parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the Agreements reached were the result of good-faith, arms' length negotiation between the Parties with the help of Judge Segal, whose wealth of knowledge and experience facilitated this settlement. Mr. Kristensen has tried multiple employment cases and obtained substantial settlements against employers, including against another exotic dance club in excess of a million dollars. Mr. Kristensen has also settled in excess of fifty individual FLSA claims against strip clubs in the past two years, including during the COVID-19 pandemic. *See* Kristensen Decl. ¶¶ 2–26, Exs. 1–38.

The Parties have strenuously different opinions about the classification of the dancers as employees or independent contractors and whether the dance fees charged by and collected by the Defendants belonged to the Defendants or was a tip belonging to Plaintiffs. The Parties engaged in discovery with the formal and informal exchange of documents, and a Motion for Notice pursuant to 29 U.S.C § 216(b). The Parties' counsel were cognizant and aware of each other's arguments and positions pertaining to employee classification. The Parties participated in settlement negotiations in good faith. The Parties defended their positions about the disputed aspects of the case and a resolution was ultimately reached.

Because the Parties disputed these aspects of the case, the purpose of the bona fide dispute requirement has been satisfied here. *See Saleh v. Valbin Corp.*, No. 17-CV-0593-LHK, 2018 WL 6002320, at *2 (N.D. Cal. Nov. 15, 2018) (citing *Lynn Food Stores*, 679 F.2d at 1353 n.8) ("The purpose of this analysis is to ensure that an employee does not waive claims for wages, overtime compensation, or liquidated damages when no actual dispute exists between the

parties.").

## B.    *Fair and Reasonable Resolution*

To determine whether the settlement is fair and reasonable, the Court looks to the "totality of the circumstances" and the "purposes of [the] FLSA." *Selk*, 159 F.Supp.3d at 1173. In making this determination, courts consider the following factors: (1) the Plaintiffs' range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See*, *e.g.*, *id.*; *Jennings*, 2018 WL 4773057, at *4. Plaintiffs will address each of these factors accordingly.

### 1.    Plaintiffs' Possible Range of Recovery

Regarding Plaintiffs' range of possible recovery, courts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable. *See*, *e.g.*, *Jennings*, 2018 WL 4773057, at *5–*6; *Selk*, 159 F.Supp.3d at 1175; *Glass v. UBS Financial Services, Inc*., No. 06-CV-4068-MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), aff'd, 331 F. App'x 452 (9th Cir. 2009); *Greer v. Pac. Gas & Elec. Co*., No. 15-CV-1066-EPG, 2018 WL 2059802, at *8 (E.D. Cal. May 3, 2018); *Johnson v. MetLife, Inc*., No. SACV 13-128-JLS, 2014 WL 12773568, at *9 (C.D. Cal. Nov. 6, 2014).

Approximately, each dancer at Red Tie was owed the following per shift:

| | |
|---|---|
| Minimum Wage: | $145.00 |
| Forced Tips: | $60.00 |
| House/Stage Fees: | $75.00 |
| **Total Loss / Shift:** | $280.00 |

Caldwell Bresin worked at Red Tie from 2019 to 2020. She worked around 64 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Caldwell Bresin's claim is estimated at $6,000.

Donis worked at Red Tie from December 2016 to November 2019. She worked around 608 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Donis' claim is estimated at $30,000.

Goodman worked at Red Tie from 2016 to 2020. She worked around 780 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Goodman's claim is estimated at $25,000.

Hice worked at Red Tie from July 2017 to March 2020. She worked around 429 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured and Hice took time off working at Red Tie for a period of time after she gave birth to her child. Using the same average nightly loss, Hice's claim is estimated at $25,000. Hice has already been paid $10,000 from Red Tie, which is the subject of the Motion for Corrective Notice, and this settlement provides for an additional payment of $10,000 to Hice for her claims, thereby providing for her a total of $20,000.

Hunt worked at Red Tie from 2019 to 2020. She worked around 112 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Hunt's claim is estimated at $5,000.

Hurley worked at Red Tie from 2018 to 2020. She worked around 520 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Hurley's claim is estimated at $40,000.

Mammensohn worked at Red Tie from 2015 to 2020. She worked around 780 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Mammensohn's claim is estimated at $40,000.

McElhaney worked at Red Tie from 2019 to 2020. She worked around 228 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, McElhaney's claim is estimated at $6,500.

Montiel worked at Red Tie from June 2018 to 2019. She worked around 96 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, McElhaney's claim is estimated at $12,000. Montiel signed a "settlement" with Red Tie, which is the subject of the Motion for Corrective Notice, and this settlement provides for an additional payment of $10,000 to Montiel for her claims.

Munns worked at Red Tie from 2015 to 2020. She worked around 780 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Munns' claim is estimated at $22,000.

Patterson worked at Red Tie from October 2017 to November 2021. She worked around 936 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Patterson's claim is estimated at $30,000.

Real worked at Red Tie from 2015 to 2018. She worked around 312 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Real's claim is estimated at $9,000.

///

Resendez worked at Red Tie from 2019 to 2021. She worked around 416 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Resendez's claim is estimated at $15,000.

Solis worked at Red Tie from 2016 to 2019. She worked around 624 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Solis' claim is estimated at $23,000.

Valtierra worked at Red Tie from 2017 to 2020. She worked around 780 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, Valtierra's claim is estimated at $26,000.

White worked at Red Tie from 2019 to 2020. She worked around 96 shifts. However, because of the statute of limitations based on when she joined this matter, not all of her shifts could be captured. Using the same average nightly loss, White's claim is estimated at $20,000.

The Parties disputed the number of shifts and the hours worked by Plaintiffs. That played a role in evaluating the value of each claim.

The FLSA structure was intentionally designed by Congress as a remedial measure to incentivize and encourage private attorneys to pursue lower damage wage and hour claims with clear liability. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [FLSA]." *Soler v. G & U, Inc.*, 658 F.Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys

general is key to the effective enforcement of these statutes." *Trinidad v. Pret a Manger (USA) Ltd*., No. 12-cv-6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014).

The Agreements reflect a substantial award to Plaintiffs. Counsel spent considerable time litigating the matter which is evidenced in their lodestar. Plaintiffs' counsel's skill, tenacity and the potential of a large attorneys' fees award contributed to the overall settlement. This settlement is very favorable to Plaintiffs, and in light of the work performed in the lawsuit and the juncture of the settlement in the litigation, the settlement amounts are reasonable.

### 2.      The Stage of Proceedings and Amount of Discovery Completed

The Court must next assess "the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement." *Jennings*, 2018 WL 4773057, at *5 (quoting *Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *4 (N.D. Cal. June 22, 2017)). If the parties have "sufficient information to make an informed decision about [the] settlement, this factor weighs in favor of approval." *Id.* (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

The Parties had engaged in several rounds of written discovery, depositions, and the informal exchange of documents for settlement purposes by the time mediation took place, as well as a prior mediation session, and a pending appeal. As the Court is aware, the Parties had fully briefed several motions before the Court, including Plaintiff's motion for issuance of notice pursuant to section 216(b) of the FLSA. The settlement is the result of extensive pre-suit investigation, review of formal and informal discovery, and substantial arm's-length negotiation between counsel. The Parties had a good understanding of the merits of their positions by the time of the Settlement Conference, which led to

the settlement reached.

### 3.   Seriousness of Litigation Risks Faced by the Parties

Courts will approve an FLSA settlement when there is a significant risk that litigation could result in a lower recovery for the class or no recovery at all. *See Jennings*, 2018 WL 4773057, at *5. Several facts in this case potentially jeopardize Plaintiffs' recovery should their claims proceed in trial, including Defendants' written employment policies and testimony from supervisors contradicting Plaintiffs' claims, and Plaintiffs' potential inability to prove that Defendants' alleged violations were willful or ability to corroborate the number of hours and shifts worked. Accordingly, further litigation might result in Plaintiffs recovering less than the Settlement or perhaps nothing at all, so this factor weighs in favor of approving the FLSA settlement.

### 4.   Scope of Any Release Provision in the Agreements

Courts in this Circuit have rejected blanket releases of all potential claims against the employer for all unlawful acts whatsoever. *See*, *e.g.*, *McKeen-Chaplin v. Franklin Am. Mortg. Co*., No. 10-CV-5243-SBA, 2012 WL 6629608, at *5 (N.D. Cal. Dec. 19, 2012) (ruling that the plaintiffs failed to demonstrate that it would be fair and reasonable for a court to enforce a general release provision of all claims related to their employment in an FLSA settlement); *Garcia v. Jambox, Inc.*, No. 14-CV-3504-MHD, 2015 WL 2359502, *4 (S.D.N.Y. Apr. 27, 2015) (disapproving of release of all claims known and unknown against defendants, including those that seemingly had "no relationship whatsoever" to wage and hour issues); *Ambrosino v. Home Depot. U.S.A., Inc*., No. 11-CV-1319-MDD, 2014 WL 1671489, at *2-3 (S.D. Cal. Apr. 28, 2014) (same). However, when a district court in the Ninth Circuit approves an FLSA collective action settlement, it may approve a release of any claims sufficiently related to the current litigation. *See Selk*, 159 F.Supp.3d at 1178–79; *see also Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (citing *Class Plaintiffs v.*

*City of Seattle*, 955 F.2d 1268, 1287–89 (9th Cir. 1992)).

The Agreements here are similar to others approved in this Distict. *See Johnson v. The Strip Joint*, No.8:19-cv-01623-JVS-KES, Dkt. 29 (Jan. 31, 2020); *see also Woodmore v. Solitaire Holdings, LLC dba Knockouts*, No. 2:19-cv-09017-RGK-AGR, Dkt. 17 (Feb. 9, 2020).

As such, the Agreements here do not weigh against approval.

### 5.    Experience and Views of Counsel and Opinion of Participating Plaintiffs

"In determining whether a settlement is fair and reasonable, '[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases.'" *Slezak*, 2017 WL 2688224, at *5 (quoting *Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. Jul. 11, 2014)).

Plaintiffs' counsel and Defendants' counsel have substantial experience litigating wage and hour cases and handling complex and class actions. Counsel for the Parties knew the strengths and weaknesses of the opposing side's case as can be evidenced by the fully briefed motions before the Court. With the help of Magistrate Judge Castillo, the Parties were able to reach a Settlement. Plaintiffs' counsel's substantial experience and judgment resulted in this Settlement. Additionally, Plaintiffs have been made aware of the terms of the settlement and have signed the Agreements. Accordingly, this factor weighs in favor of approval.

### 6.    Possibility of Fraud or Collusion

When considering this factor, courts may look for indications that the plaintiffs' counsel "allowed the pursuit of their own self-interests and that of certain class members to infect the negotiation" or for "evidence of more 'subtle signs' of collusion, such as 'when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class

counsel are amply rewarded.'" *Selk*, 159 F. Supp. 3d at 1180 (quoting *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011)).

The Settlement was the result of extensive pre-suit investigation, review of formal and informal discovery, zealous advocacy on both sides, and substantial arm's-length negotiations between counsel, aided by Magistrate Judge Castillo. While Plaintiffs' counsel is receiving payment of reimbursable costs and attorneys' fees from the Settlement, there is nothing out of the ordinary in this arrangement. *See Slezak*, 2017 WL 2688224, at *5 ("[C]ounsel is receiving a substantial fee. However, the class is also receiving a significant monetary benefit."); *Selk*, 159 F. Supp. 3d at 1179-80 ("[T]he amount of the individual settlement payments to be received by opt-in members is based on an analysis of employee time records and an estimate of the degree of under-compensation during the relevant period. This approach guards against the arbitrariness that might suggest collusion." (citation omitted)). This factor therefore weighs in favor of approval.

## VII.   THE ATTORNEYS' FEES AND COSTS REQUEST IS REASONABLE

### A.   *FLSA Collective Action Settlements Allow for a Greater Recovery of Attorneys' Fees Than Rule 23 Class Action Settlements*

Plaintiffs' request for attorneys' fees is reasonable and in line with many other district court orders granting similar fees in FLSA settlements. FLSA settlements are distinct from Rule 23 class action settlements and, as such, allow for a greater recovery of fees. Several California district judges (Hon. John F. Walter, Hon. R. Gary Klausner, Hon. James V. Selna, Hon. Jesus G. Bernal) and District Judges around the country have granted similar requests for attorneys' fees for Plaintiffs' counsel within the last three years. *See* Kristensen Decl. ¶¶ 31–40, 43–49; Exs. 20–29, 32–38.

///

In Rule 23 class actions, attorneys more often than not seek fees in excess of their lodestar by requesting that the court apply a positive modifier. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F.Supp.2d 249, 271 (D.N.H. 2007) (approving Rule 23 class action settlement with lodestar multiplied of 2.697); *see also In re TJX Companies Retail Sec. Breach Litig.*, 584 F.Supp.2d 395, 408 (D.Mass. 2008) (applying a lodestar multiplier of 1.97); *In re Visa Check/MasterMoney Antitrust Litig.*, 297 F.Supp.2d 503, 524 (E.D.N.Y. 2003), aff'd sub nom. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) (applying lodestar multiplier of 3.5). By contrast, here, Plaintiffs' counsel merely seeks a negative or inverse multiplier, resulting in an award less than their lodestar. *See* Kristensen Decl. ¶ 30; Exs. 17 & 19

FLSA settlements are subject to a different standard and allow for a greater recovery of attorneys' fees than Rule 23 class action settlements in order to encourage attorneys to take on these sorts of wage-and-hour cases. *See Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1267 (D. Nev. 2014), *aff'd*, 655 F. App'x 602 (9th Cir. 2016) ("there is no requirement that fee awards be proportionate to the monetary recovery, unduly restricting fee awards would discourage attorneys from taking FLSA cases, and a successful FLSA claim vindicates statutory rights, even if it does not result in a substantial monetary recovery."); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (holding that a proportionality rule limiting attorney's fees to 33% of total settlement would also be inconsistent with the remedial goals of the FLSA); *see also Earls v. Forga Contracting, Inc.*, No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921, at *4 (W.D.N.C. June 9, 2020) (noting that "courts have rejected the notion that [FLSA] fee awards should be proportionately tied to a Plaintiffs' recovery." (quotation omitted)); *Kazanjian v. MSM Enterprises, Inc.*, No. CIV. 93-227-P-C, 1995 WL 140153, at *3 (D.Me. Mar. 15, 1995) ("in an FLSA fee determination, a court should not place *undue* emphasis on the amount recovered

by a plaintiff since the award of fees 'encourages the vindication of congressionally identified policies and rights,' even if the recovery is only nominal.").

Indeed, the public policy encouraging attorneys to take on FLSA cases often results in situations where the attorney's fees surpass the Plaintiffs' award. *See Bonnette v. California Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir.1983) (affirming $100,000 in attorney fees on a judgment of $18,455 in damages); *SKF USA Inc. v. Bjerkness*, Nos. 08 C 4709, 09 C 2232, 2011 WL 4501395, at *3 (N.D. Ill. 2011) (refusing to reduce a $1.3 million dollar award of attorneys' fees when the damages were only $81,068 because Congress predetermined the claim was worth bringing even though there was great disparity between the amount recovered and the attorneys' fees requested); *also Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994) ((affirming attorney fees of $40,000 on a judgment of $7,680 for overtime compensation); *Lucio–Cantu v. Vela*, 239 Fed. App'x. 866 (5th Cir.2007) (finding no abuse of discretion in award of $51,750 in attorney fees on a recovery of $4,679). In this case however, Plaintiffs' attorneys merely seek an amount in fees totaling 45% of the total settlement, which is less than their lodestar. *See* Kristensen Decl. ¶¶ 27 & 30; Exs. 1-17 & 19.

Therefore, the Court here should not limit itself in awarding attorney's fees as if this case were a Rule 23 class action. It is not a class action, but instead a collective action with public policy considerations that afford a more generous calculation of fees.

**B.**     ***Plaintiffs' Attorneys' Fees Totaling 45% of the Settlement Is a Reduction of the Lodestar and Would Therefore Be a Reasonable Award***

It is well settled that a reasonable amount of fees is determined pursuant to the "lodestar approach," which involves calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."

1   *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir.2001)

2   (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40

3   (1983)); *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz.

4   2019) ("[t]o determine a reasonable attorneys' fee under FLSA, the Court uses the

5   lodestar method."); *Mills v. Cabral*, No. CIV.A. 06-10133-RGS, 2010 WL

6   2553889, at *1 (D.Mass. June 18, 2010) ("[i]n determining an appropriate award

7   of fees and costs under the FLSA, the court employs the lodestar approach.");

8   *Marrotta v. Suffolk Cty.*, 726 F.Supp.2d 1, 25 (D.Mass. 2010) (approving FLSA

9   attorneys' fees at lodestar amount).

10       In this case, Plaintiffs' counsel has a lodestar of $260,505. *See* Kristensen

11   Decl. ¶ 30; Exs. 17 & 19. However, Plaintiffs' counsel is merely seeking

12   $253,125 in fees, which is less than their lodestar and consists of 45% of the total

13   settlement. *See id.* In other words, Plaintiffs' counsel is seeking less than what

14   they would otherwise be entitled to based on the time they have spent litigating

15   this matter. *See id.*

16       The fees sought in this matter are commensurate with the time and effort

17   exerted to achieve a favorable settlement and the overall skill of Plaintiffs'

18   attorneys. Plaintiffs' counsel is well versed in both FLSA collective actions and

19   Rule 23 class actions and have achieved numerous successful outcomes.

20   Furthermore, Plaintiffs' attorneys' hourly rates are reasonable and are similar to

21   those approved by other district courts throughout the country.

22       In *Macklin v. Biscayne Holding Corp et al*, 1:19-cv-00561-WES-PAS

23   (D.R.I. 2019), Plaintiffs' counsel sought approval of a similar FLSA settlement

24   involving the wage and hour claims of exotic dancers. *See* Kristensen Decl. at ¶¶

25   43–45; Exs. 32–34. In the *Macklin* case, Plaintiffs' counsel sought a reduction of

26   their lodestar and a fee award consisting of 45% of the settlement. *See id.* There,

27   Judge Smith found both the settlement and the attorney's fees and costs to be

28   reasonable. *See id.*

Also, while the lodestar amount is presumed to be a reasonable calculation of attorneys' fees, it is within the Court's discretion to adjust the lodestar figure. *See Marrotta*, 726 F.Supp.2d at 25. Within the past two years alone, three separate judges in California have granted Plaintiffs' counsel's request to apply a negative modifier to the lodestar in order to achieve a fee award comprising of 45% of the total FLSA settlement. *See* Kristensen Decl. at ¶¶ 31–36, 48–49, Exs. 20–25, 37–38. District courts in Florida and Wisconsin have followed suit and also granted Plaintiffs' counsel attorney's fees totaling 45% of the settlement. *See* Kristensen Decl. at ¶¶ 37–40, 43–47, Exs. 26–29, 32–36.

Ultimately, the FLSA settlements in this case represent a far more favorable outcome for Plaintiffs than if they pursued their claims through a Rule 23 class action. By virtue of their sheer size, class actions often lead to a smaller award for each individual plaintiff. In *Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015), a similar exotic-dancer wage-and-hour class case settled for roughly $15 million. *See Hart*, 2015 WL 5577713 at *5. However, the Rule 23 class comprised of 2,208 members and each only received on average $4,254.98. *See id.* Similarly, in *Ortega v. The Spearmint Rhino Companies Worldwide Inc., et al.,* 5:17-cv-00206-JGB-KK (C.D. Cal. July 5, 2021), the district court awarded a net settlement amount of $2,600,000 to an exotic dancer class action. *See* Kristensen Decl. at ¶ 41, Ex. 30. However, the class consisted of 650 individuals and the awards averaged out to only $4,000 per class member. *See id; see also Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 2494569, at *3 (N.D. Cal. May 14, 2020) (granting preliminary approval of Rule 23 settlement on behalf of exotic dancers that would pay "$836 per class member"); *Doe 1-2 v. Deja Vu Servs., Inc.*, 2017 WL 2629101, at *5 (E.D. Mich. June 19, 2017), *aff'd sub nom. Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019) (approving Rule 23 settlement on behalf of exotic dancers, many of whom worked in California, where "the

average payment from the cash pool will be around $200"); Kristensen Decl. at ¶ 42, Ex. 31, *Byrne v. Santa Barbara Hospitality Services, Inc.*, C.A. No. 17-00527, Dkt. 178 (C.D. Cal. Dec. 14, 2018) (approving settlement proposing to pay 566 claiming class members between $350,884 to $598,453, or average shares of between $620 and $1,057 per participating class member).

## VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion in its entirety.

Dated: August 4, 2022

Respectfully submitted,

**CARPENTER & ZUCKERMAN**

*/s/ John P. Kristensen*

John P. Kristensen
Jesenia A. Martinez

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Thursday, August 04, 2022, a true and correct copy of the attached **PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT** and accompanying documents were served via CM/ECF to the parties listed below, pursuant to Fed. R. Civ. P. 5:

Calvin R. House
Dennis D. Gutierrez
**GUTIERREZ, PRECIADO & HOUSE, LLP**
3020 E. Colorado Boulevard
Pasadena, California 91107
Email: calvin.house@gphlawyers.com
Email: dennis.gutierrez@gphlawyers.com

***Counsel for All Defendants***

_____
*/s/ John P. Kristensen*
John P. Kristensen